**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

JUDGE SWAIN

| | |
|---|---|
| **RICHARD A. WILLIAMSON, ON BEHALF OF AND AS TRUSTEE FOR AT HOME BONDHOLDERS' LIQUIDATING TRUST,** | |
| **Plaintiff,** | |
| **vs.** | |
| **VERIZON COMMUNICATIONS INC., VERIZON SERVICES CORP., VERIZON CORPORATE RESOURCES GROUP LLC, VERIZON DATA SERVICES LLC, VERIZON NEW YORK INC., AT&T INC., AT&T OPERATIONS, INC., AT&T SERVICES, INC.,** | |
| **Defendants.** | |

11 CIV 4948

Civil Action No. _____

DEMAND FOR JURY TRIAL



## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Richard A. Williamson, on behalf of and as Trustee for At Home Bondholders'
Liquidating Trust ("Plaintiff" or "At Home"), by and through its undersigned counsel, files this
Complaint for patent infringement against Defendants Verizon Communications Inc., Verizon
Services Corp., Verizon Corporate Resources Group LLC, Verizon Data Services LLC and
Verizon New York Inc. (collectively "Verizon") and AT&T Inc., AT&T Operations, Inc. and
AT&T Services, Inc. (collectively, "AT&T") (AT&T and Verizon are collectively referred to
herein as "Defendants"), and alleges as follows:

## NATURE OF THE SUIT

1.      This is a civil action based upon and arising under the Patent Laws of the United States for the infringement of United States Patent Nos. 6,370,571 ("the '571 Patent"), 7,225,275 ("the '275 Patent"), 7,529,856 ("the '856 Patent"), and 7,873,749 ("the '749 Patent") (collectively, the "Patents-in-Suit"), duly and legally issued on April 9, 2002, May 29, 2007, May 5, 2009, and January 18, 2011, respectively.  True and correct copies of the '571, '275, '856, and '749 Patents are attached hereto as Exhibits 1, 2, 3 and 4, respectively.

2.      The patented technology generally relates to Internet Protocol television ("IPTV") and, more particularly, to systems and methods for delivering video content from a high-speed network backbone to end users through a network of regional servers and caching servers which customize content received from the backbone and provide multiple levels of caching.

3.      Defendants Verizon and AT&T each make, use, offer for sale, and sell products and services in the United States that utilize the patented technology, namely, Verizon's FiOS product and service and AT&T's U-verse product and service.

## THE PARTIES

4.      Plaintiff Richard A. Williamson is Trustee of a liquidating trust formed under the confirmed plan of reorganization for At Home Corporation and its affiliates (collectively, "At Home Corporation") in connection with its bankruptcy filing on September 28, 2001, Case No. 01-32495-TC, in the United States Bankruptcy Court for the Northern District of California, San Francisco Division.  Plaintiff is a partner with Flemming Zulack Williamson Zauderer LLP, One Liberty Plaza, New York, New York 10006-1404.

5.      On information and belief, defendant Verizon Communications Inc. is a Delaware corporation with its principal place of business at 140 West Street, New York, New York 10007.

6.      On information and belief, defendant Verizon Services Corp. is a Delaware corporation registered to do business in the State of New York.  On information and belief, Defendant Verizon Services Corp. is a wholly-owned subsidiary of Verizon Communications Inc.

7.      On information and belief, Defendant Verizon Corporate Resources Group LLC is a Delaware limited liability company registered to do business in the State of New York.  On information and belief, Defendant Verizon Corporate Resources Group LLC is a wholly-owned subsidiary of Verizon Communications, Inc.

8.      On information and belief, Defendant Verizon Data Services LLC is a Delaware limited liability company registered to do business in the State of New York.  On information and belief, Defendant Verizon Data Services LLC is a wholly-owned subsidiary of Verizon Communications Inc.

9.      On information and belief, Defendant Verizon New York Inc. is a New York corporation with its principal place of business at 140 West Street, New York, New York 10007.  On information and belief, Defendant Verizon New York Inc. is a wholly-owned subsidiary of Verizon Communications Inc.

10.     On information and belief, defendant AT&T Operations, Inc. ("AT&T Operations") is a Delaware corporation registered to do business in the State of New York.  On information and belief, AT&T Operations is a wholly owned subsidiary of AT&T Inc.

11.     On information and belief, defendant AT&T Services, Inc. ("AT&T Services") is a Delaware corporation registered to do business in the State of New York.  On information and belief, AT&T Services is a wholly-owned subsidiary of AT&T Inc.

12.     On information and belief, defendant AT&T Inc. is a Delaware corporation that conducts significant business in the State of New York through its subsidiaries, including through AT&T Services and AT&T Operations.

## JURISDICTION AND VENUE

13.     This action is for patent infringement under the Patent Laws of the United States of America, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271(a)-(c).  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

14.     This Court has personal jurisdiction over Defendants because, among other reasons, Defendants have done business in this judicial district, have continuous and systematic contacts within this district, have committed and continue to commit acts of patent infringement in this judicial district, and/or have harmed and continue to harm At Home in this judicial district by, among other things, making, using, offering for sale, and/or selling infringing services, systems and/or methods to deliver video content to customers in this judicial district and others.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 because, among other reasons, Defendants are subject to personal jurisdiction and/or have committed acts of patent infringement in this judicial district.

16.     On information and belief, in or about June 2006, Verizon introduced its FiOS TV service in New York State.  On information and belief, the FiOS TV service was launched in this judicial district in or about May 2007.  On information and belief, Verizon continues to use, offer for sale, and/or sell FiOS TV to customers in New York State, including to customers in this judicial district.

17.     According to Verizon's website, there are at least 15 FiOS TV store locations in New York State, including numerous locations in this judicial district.

18.     On information and belief, Verizon invested more than $1.4 billion in New York State landline infrastructure in or around 2010.

19.     AT&T Operations and AT&T Services have each registered to do business within the State of New York and are therefore each subject to personal jurisdiction in the state.

20.     AT&T Operations and AT&T Services are wholly-owned subsidiaries of AT&T Inc.   On information and belief, AT&T Inc. conducts business in this district through its subsidiaries, including through AT&T Services and AT&T Operations.   For example, and without limitation, through AT&T Services, AT&T Inc. provides customer billing and collection services to customers in this district using the online billing and payment system at www.att.com administered and managed by AT&T Services.   In addition, AT&T Operations enters into billing and collection service contracts with various billing aggregation companies on behalf of AT&T Inc. in this district.

21.     AT&T Inc. actively manages and controls its global enterprise comprising the business operations of all of its subsidiaries and affiliates, including AT&T Operations and AT&T Services, and markets these services as coming from a unified entity known as "AT&T."

22.     According to AT&T Inc.'s 2010 Annual Report, AT&T Inc. owns and operates a network that "covers more than 300 million people," including people in this judicial district, and provides "the broadest international access of any U.S. mobile provider."   Its Annual Report also states that AT&T Inc.'s "global networking capabilities provide advanced connections for businesses to 182 countries" and that, "on an average business day, [AT&T Inc.'s] global backbone carries nearly 24 petabytes of data traffic — more than 100 times the digitized Library of Congress."

23.     AT&T Inc.'s 2010 Annual Report states that AT&T Inc. has "the United States' fastest mobile broadband network, based on independent tests" and that AT&T Inc. has

"expanded its reach through access to more than 24,000 Wi-Fi hotspots nationwide," including in this judicial district.

24.     On information and belief, AT&T Services and AT&T Operations pass their earnings upstream to AT&T Inc., which reports those earnings as its own.  For example, in its 2010 Annual Report, AT&T Inc. reported the consolidated financial results of its subsidiaries, including AT&T Operations and AT&T Services, as the results of AT&T Inc.  In its 2010 Annual Report, AT&T Inc. used the terms "we," "us," "AT&T" and "Company" to refer to both AT&T Inc. as well as its subsidiaries, including AT&T Operations and AT&T Services.

25.     In its 2010 Annual Report, for 2010, AT&T Inc. reported operating revenues of $124.28 billion and 266,590 employees, which, on information and belief, includes numerous employees in New York.

26.     On information and belief, AT&T Inc.'s officers and directors overlap with those of its subsidiaries, AT&T Operations and AT&T Services.  For example, and without limitation, AT&T Inc.'s 2010 Annual Report identifies Jim Cicconi, Senior Executive Vice President-External and Legislative Affairs, AT&T Services, Inc., as being on AT&T Inc.'s Executive Leadership Team and AT&T Inc.'s 2009 Annual Report identifies John Stankey, President and CEO, AT&T Operations, Inc., as being on AT&T Inc.'s Executive Leadership Team.

27.     AT&T Inc. is listed on the New York Stock Exchange.

28.     On information and belief, AT&T Inc. directly or indirectly owns significant real property in this district, including the lots and buildings located at 811 Tenth Avenue and at 33 Thomas Street, both in New York, NY.  AT&T Inc. obtained these properties from AT&T Corp. in 2006.

29.     AT&T Inc. has availed itself of the New York Courts by asserting counterclaims in at least the following actions in the Southern District of New York: *The Farmers' Telephone*

*Company of Richville, Iowa, Inc. et al. v. AT&T Inc.*, Case No. 1:07-cv-00859; *All American Telephone Company, Inc. et al. v. AT&T, Inc.*, Case No. 1:07-cv-00861; and *Aventure Communication Technology, L.L.C. v. AT&T, Inc.*, Case No. 1:07-cv-01780.

## FACTUAL BACKGROUND

30.     At Home Corporation was a company built on cutting edge technology. At Home Corporation was founded by William Randolph Hearst III (former editor of the *San Francisco Examiner* and grandson of the famous media baron) as a joint venture of three cable companies – Cox, Comcast, and TCI (later purchased by AT&T Corp.). At Home Corporation built, among other things, the At Home Network, a high-speed cable internet service which operated from about late 1996 to 2002, to provide internet access to homes and businesses through its own proprietary architecture.

31.     At Home Corporation did not simply provide a portal to the already overburdened Internet. Rather, it developed advanced network technology that enabled connections up to a hundred times faster than traditional telephone modems. In essence, At Home Corporation created a parallel internet universe of its own, providing users with significant speed increases over conventional dial-up internet access, while its national, multi-megabit backbone allowed for services that were far superior to conventional web experiences of the time.

32.     At Home Corporation's revolutionary product was a significant success and the company went public in 1997. By the Fall of 2001, At Home Corporation had grown from having no subscribers to providing high speed internet service for 4.1 million subscribers in the U.S. and elsewhere.

33.     In December 1998, At Home Corporation purchased Excite in a $6.7 billion merger. The new entity, known as Excite@Home, combined the high-speed internet At Home Network with Excite's internet portal and search engine, giving rise to personalized web portal

content, a concept now commonplace in all internet portals. Excite@Home was by far the largest high-speed internet service provider in the United States, and was among the top 10 internet service providers measured by number of subscribers.

34.    Despite this meteoric rise in subscribers (and the accompanying revenue growth generated from its booming subscriber base), At Home Corporation was never profitable due to the one-sided Master Distribution Agreements (MDAs) imposed on At Home Corporation as a captive company of its cable company customers, including AT&T Corp. At Home Corporation ultimately filed for bankruptcy protection in September 2001, and is now defunct. In September 2002, the Bankruptcy Court created the At Home Bondholders' Liquidating Trust.

35.    In addition to being At Home Corporation's largest customer, after acquiring TCI in or about June 1998, AT&T Corp. became the controlling shareholder of At Home Corporation and later, in March 2000, engineered the sale of all stock in At Home Corporation by Cox and Comcast to AT&T Corp. and the relinquishment of Cox's and Comcast's At Home Corporation board seats, yielding complete control of At Home Corporation to AT&T Corp.

36.    AT&T Corp. also designated its own executives to serve as officers of At Home Corporation, who were given the authority to manage At Home Corporation's Internet access business. On information and belief, these individuals had unfettered access to At Home Corporation's trade secret and other confidential proprietary information concerning, among other things, At Home Corporation's Internet access system, network, customer provisioning data and related technology.

37.    On August 24, 2001, the AT&T Corp. designees on At Home Corporation's board learned that PricewaterhouseCoopers had prepared a report advising At Home Corporation that it needed to file for bankruptcy immediately. The report also suggested that At Home Corporation seek to reject the MDAs with the cable companies, including AT&T Corp., to create value for At

Home Corporation. Four days after hearing about this report from its designees, on information and belief, AT&T Corp. hatched a plan to build an alternate high-speed "new" network in the event At Home Corporation filed for bankruptcy and obtained the power to reject the unfavorable MDAs.

38.     After filing for bankruptcy on September 28, 2001, the bankruptcy court granted At Home Corporation the right to reject the unfavorable MDAs, which were rejected on November 30, 2001. While Cox, Comcast and others collectively paid At Home Corporation more than $355 million for additional time to transition their high-speed data customers to other networks not yet completed, AT&T Corp refused to pay since, by December 7, 2001, it had already transitioned 900,000 customers to its "new" network.

39.     In late 2002, At Home commenced several lawsuits against AT&T Corp. and the insiders designated by AT&T Corp. as directors and officers of At Home Corporation. Those lawsuits included claims for, among other things, breach of fiduciary duty, breach of contract and misappropriation of trade secrets. The lawsuits alleged that AT&T Corp. abused its position as a controlling shareholder of At Home Corporation by using its position of trust to build an alternative to At Home Corporation's high-speed data network and move its 900,000 high-speed cable customers from At Home Corporation to AT&T Corp. On information and belief, in building an alternate high-speed network, AT&T Corp. improperly used confidential At Home Corporation information and At Home Corporation trade secrets – thereby placing its own interests above those of At Home Corporation in direct breach of its fiduciary duties to At Home Corporation.

40.     The At Home lawsuits also included patent infringement claims against AT&T Corp. in the United States District Court for the Northern District of California accusing AT&T Corp. of infringing the '571 Patent through the use of AT&T Corp.'s DSL and cable Internet

systems. At Home did not accuse the AT&T U-verse system in the California lawsuit because the U-verse system did not yet exist. AT&T Corp. unsuccessfully sought to transfer the California lawsuit to the Southern District of New York, representing to the court that it would be more convenient to litigate the suit there.

41.     In mid 2005, AT&T Corp. paid At Home $400 million ($340 million in cash and a release of $60 million in reserves established in the bankruptcy for certain AT&T Corp. claims against the At Home Corporation estate) to settle the lawsuits between them. While the settlement included the dismissal of At Home's '571 Patent claims against AT&T Corp., At Home declined to grant a license (or a forward-looking release) to AT&T Corp. under the '571 Patent (or under any other patent). The settlement of At Home's patent claims included a release only of all causes of action that At Home "had in the past or [then] currently ha[d]" as to AT&T Corp. This could not have, and did not, act to release AT&T Corp., or any other AT&T entity, for subsequent infringement of any patents, including the present AT&T defendants' infringement of the Patents-in-Suit as alleged in this action. Indeed, the U-verse product and service were not introduced until after the 2005 AT&T settlement, and the '275, '856, and '749 Patents did not issue until years after the 2005 AT&T settlement (in 2007, 2009, and 2011, respectively). AT&T Corp. is not a defendant in this action.

42.     Despite not obtaining a license to the '571 Patent or to any other of At Home's patents, including the '275, '856, and '749 Patents sued on in this action, the AT&T defendants in this action built and now operate the U-verse product and service in violation of At Home's patents. The AT&T defendants have done so with knowledge of the '571 Patent and, on information and belief, the '275, '856, and '749 Patents, and with the knowledge that they have no rights under the Patents-in-Suit.

43.     In addition, Verizon built and now operates the FiOS product and service in violation of At Home's patents.  On information and belief, Verizon has done so with knowledge of the Patents-in-Suit, and with the knowledge that it has no rights under the Patents-in-Suit.

44.     The Verizon FiOS and AT&T U-verse products and services infringe the Patents-in-Suit by comprising systems and methods for delivering video content from a high-speed network backbone to end users through a network of regional servers and caching servers which customize video content received from the backbone and provide multiple levels of caching.

### COUNT I – INFRINGEMENT OF THE '571 PATENT BY VERIZON

45.     At Home incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

46.     At Home is the owner of the entire right, title and interest in and to the '571 Patent, entitled "System And Method For Delivering High-Performance Online Multimedia Services," which was duly issued on April 9, 2002.

47.     On information and belief, Verizon has infringed and is currently infringing the '571 Patent, in violation of 35 U.S.C. § 271, by, among other things, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '571 Patent including without limitation Verizon's FiOS product and/or service.

48.     On information and belief, Verizon induced and is actively inducing the infringement of the '571 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '571 Patent including without limitation Verizon's FiOS product and/or service.

49.     On information and belief, Verizon has contributorily infringed and is currently contributorily infringing the '571 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '571 Patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '571 Patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

50.     Verizon's acts of infringement have caused damage to At Home, and At Home is entitled to recover from Verizon the damages that At Home has sustained as a result of the infringing acts.  Moreover, Verizon's infringement of the '571 patent will continue to damage At Home, causing irreparable harm, unless such infringement is enjoined.

51.     On information and belief, Verizon's infringement of the '571 patent is willful and deliberate, entitling At Home to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF THE '275 PATENT BY VERIZON

52.     At Home incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

53.     At Home is the owner of the entire right, title and interest in and to the '275 Patent, entitled "System And Method For Delivering High-Performance Online Multimedia Services," which was duly issued on May 29, 2007.

54.     On information and belief, Verizon has infringed and is currently infringing the '275 Patent, in violation of 35 U.S.C. § 271, by, among other things, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without

license or authority, products and/or processes falling within the scope of one or more claims of the '275 Patent including without limitation Verizon's FiOS product and/or service.

55.     On information and belief, Verizon induced and is actively inducing the infringement of the '275 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '275 Patent including without limitation Verizon's FiOS product and/or service.

56.     On information and belief, Verizon has contributorily infringed and is currently contributorily infringing the '275 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '275 Patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '275 Patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

57.     Verizon's acts of infringement have caused damage to At Home, and At Home is entitled to recover from Verizon the damages that At Home has sustained as a result of the infringing acts.  Moreover, Verizon's infringement of the '275 patent will continue to damage At Home, causing irreparable harm, unless such infringement is enjoined.

58.     On information and belief, Verizon's infringement of the '275 patent is willful and deliberate, entitling At Home to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III – INFRINGEMENT OF THE '856 PATENT BY VERIZON

59.     At Home incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

60.     At Home is the owner of the entire right, title and interest in and to the '856 Patent, entitled "Delivering Multimedia Services," which was duly issued on May 5, 2009.

61.     On information and belief, Verizon has infringed and is currently infringing the '856 Patent, in violation of 35 U.S.C. § 271, by, among other things, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '856 Patent including without limitation Verizon's FiOS product and/or service.

62.     On information and belief, Verizon induced and is actively inducing the infringement of the '856 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '856 Patent including without limitation Verizon's FiOS product and/or service.

63.     On information and belief, Verizon has contributorily infringed and is currently contributorily infringing the '856 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '856 Patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '856 Patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

64.     Verizon's acts of infringement have caused damage to At Home, and At Home is entitled to recover from Verizon the damages that At Home has sustained as a result of the infringing acts. Moreover, Verizon's infringement of the '856 patent will continue to damage At Home, causing irreparable harm, unless such infringement is enjoined.

65.     Upon information and belief, Verizon's infringement of the '856 patent is willful and deliberate, entitling At Home to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV – INFRINGEMENT OF THE '749 PATENT BY VERIZON

66.     At Home incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

67.     At Home is the owner of the entire right, title and interest in and to the '749 Patent, entitled "Delivering Multimedia Services," which was duly issued on January 18, 2011.

68.     On information and belief, Verizon has infringed and is currently infringing the '749 Patent, in violation of 35 U.S.C. § 271, by, among other things, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '749 Patent including without limitation Verizon's FiOS product and/or service.

69.     On information and belief, Verizon induced and is actively inducing the infringement of the '749 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '749 Patent including without limitation Verizon's FiOS product and/or service.

70.    On information and belief, Verizon has contributorily infringed and is currently contributorily infringing the '749 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '749 Patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '749 Patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

71.    Verizon's acts of infringement have caused damage to At Home, and At Home is entitled to recover from Verizon the damages that At Home has sustained as a result of the infringing acts. Moreover, Verizon's infringement of the '749 patent will continue to damage At Home, causing irreparable harm, unless such infringement is enjoined.

72.    On information and belief, Verizon's infringement of the '749 patent is willful and deliberate, entitling At Home to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT V – INFRINGEMENT OF THE '571 PATENT BY AT&T**

73.    At Home incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

74.    At Home is the owner of the entire right, title and interest in and to the '571 Patent, entitled "System And Method For Delivering High-Performance Online Multimedia Services," which was duly issued on April 9, 2002.

75.    On information and belief, AT&T has infringed and is currently infringing the '571 Patent, in violation of 35 U.S.C. § 271, by, among other things, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without

license or authority, products and/or processes falling within the scope of one or more claims of the '571 Patent including without limitation AT&T's U-verse product and/or service.

76.     On information and belief, AT&T induced and is actively inducing the infringement of the '571 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '571 Patent including without limitation AT&T's U-verse product and/or service.

77.     On information and belief, AT&T has contributorily infringed and is currently contributorily infringing the '571 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '571 Patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '571 Patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

78.     AT&T's acts of infringement have caused damage to At Home, and At Home is entitled to recover from AT&T the damages that At Home has sustained as a result of the infringing acts. Moreover, AT&T's infringement of the '571 patent will continue to damage At Home, causing irreparable harm, unless such infringement is enjoined.

79.     On information and belief, AT&T's infringement of the '571 patent is willful and deliberate, entitling At Home to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VI – INFRINGEMENT OF THE '275 PATENT BY AT&T

80.     At Home incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

81.     At Home is the owner of the entire right, title and interest in and to the '275 Patent, entitled "System And Method For Delivering High-Performance Online Multimedia Services," which was duly issued on May 29, 2007.

82.     On information and belief, AT&T has infringed and is currently infringing the '275 Patent, in violation of 35 U.S.C. § 271, by, among other things, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '275 Patent including without limitation AT&T's U-verse product and/or service.

83.     On information and belief, AT&T induced and is actively inducing the infringement of the '275 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '275 Patent including without limitation AT&T's U-verse product and/or service.

84.     On information and belief, AT&T has contributorily infringed and is currently contributorily infringing the '275 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '275 Patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '275 Patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

85.     AT&T's acts of infringement have caused damage to At Home, and At Home is entitled to recover from AT&T the damages that At Home has sustained as a result of the infringing acts.  Moreover, AT&T's infringement of the '275 patent will continue to damage At Home, causing irreparable harm, unless such infringement is enjoined.

86.     On information and belief, AT&T's infringement of the '275 patent is willful and deliberate, entitling At Home to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT VII – INFRINGEMENT OF THE '856 PATENT BY AT&T

87.     At Home incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

88.     At Home is the owner of the entire right, title and interest in and to the '856 Patent, entitled "Delivering Multimedia Services," which was duly issued on May 5, 2009.

89.     On information and belief, AT&T has infringed and is currently infringing the '856 Patent, in violation of 35 U.S.C. § 271, by, among other things, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '856 Patent including without limitation AT&T's U-verse product and/or service.

90.     On information and belief, AT&T induced and is actively inducing the infringement of the '856 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '856 Patent including without limitation AT&T's U-verse product and/or service.

-19-

91.     On information and belief, AT&T has contributorily infringed and is currently contributorily infringing the '856 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '856 Patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '856 Patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

92.     AT&T's acts of infringement have caused damage to At Home, and At Home is entitled to recover from AT&T the damages that At Home has sustained as a result of the infringing acts.  Moreover, AT&T's infringement of the '856 patent will continue to damage At Home, causing irreparable harm, unless such infringement is enjoined.

93.     On information and belief, AT&T's infringement of the '856 patent is willful and deliberate, entitling At Home to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VIII – INFRINGEMENT OF THE '749 PATENT BY AT&T

94.     At Home incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

95.     At Home is the owner of the entire right, title and interest in and to the '749 Patent, entitled "Delivering Multimedia Services," which was duly issued on January 18, 2011.

96.     On information and belief, AT&T has infringed and is currently infringing the '749 Patent, in violation of 35 U.S.C. § 271, by, among other things, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '749 Patent including without limitation AT&T's U-verse product and/or service.

97.     On information and belief, AT&T induced and is actively inducing the infringement of the '749 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '749 Patent including without limitation AT&T's U-verse product and/or service.

98.     On information and belief, AT&T has contributorily infringed and is currently contributorily infringing the '749 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '749 Patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '749 Patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

99.     AT&T's acts of infringement have caused damage to At Home, and At Home is entitled to recover from AT&T the damages that At Home has sustained as a result of the infringing acts.  Moreover, AT&T's infringement of the '749 patent will continue to damage At Home, causing irreparable harm, unless such infringement is enjoined.

100.    On information and belief, AT&T's infringement of the '749 patent is willful and deliberate, entitling At Home to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

At Home prays for the following judgment and relief:

A.      Judgment that Defendants have infringed the '571 patent;

-21-

B.      Judgment that Defendants have infringed the '275 patent;

C.      Judgment that Defendants have infringed the '856 patent;

D.      Judgment that Defendants have infringed the '749 patent;

E.      An award of preliminary and permanent injunctions enjoining Defendants and their agents, servants, officers, directors, employees, and persons or entities acting in concert with Defendants, from infringing directly or indirectly, inducing others to infringe, and/or contributing to the infringement of the '571, '275, '856 and '749 patents;

F.      An award to Plaintiff for the damages necessary to compensate it for Defendants' infringement of the '571, '275, '856 and '749 patents pursuant to 35 U.S.C. § 284;

G.      An award to Plaintiff of enhanced damages for the willful infringement of the '571, '275, '856 and '749 patents pursuant to 35 U.S.C. § 284;

H.      An award to Plaintiff of its attorneys' fees, costs, expert witness fees, and expenses incurred by it in connection with this action pursuant to 35 U.S.C. § 285;

I.      Pre-judgment and post-judgment interest; and

J.      Any other and further relief, both general and special, at law or in equity, to which it is entitled.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 19, 2011

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
Chad Johnson (CJ-3395)
Joshua L. Raskin (JR-4613)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Chad@blbglaw.com
Joshua@blbglaw.com
Phone: (212) 554-1400
Fax: (212) 554-1444

BEIRNE, MAYNARD & PARSONS, LLP
William C. Norvell, Jr. (*pro hac vice* to be filed)
Scott D. Marrs (*pro hac vice* to be filed)
1300 Post Oak Blvd., Suite 2500
Houston, Texas  77056-3000
Phone: (713) 623-0887
Fax:  (713) 960-1527

COUNSEL FOR PLAINTIFF **RICHARD A. WILLIAMSON, ON BEHALF OF AND AS TRUSTEE FOR** AT HOME BONDHOLDERS' LIQUIDATING TRUST