UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICHARD A. WILLIAMSON, ON BEHALF
OF AND AS TRUSTEE FOR AT HOME
BONDHOLDERS' LIQUIDATING TRUST

              Plaintiffs,

       v.

VERIZON COMMUNICATIONS INC.,
VERIZON SERVICES CORP.,
VERIZON CORPORATE RESOURCES
GROUP LLC, VERIZON DATA SERVICES
LLC, VERIZON NEW YORK INC.,
AT&T INC., AT&T OPERATIONS, INC.,
AT&T SERVICES, INC.,

              Defendants.

---

CIVIL ACTION

ECF CASE


Civil Action No. 1:11-cv-04948 (LTS)


**AT&T DEFENDANTS'**
**MEMORANDUM IN SUPPORT**
**OF THEIR MOTION TO**
**<u>SEVER AND TRANSFER</u>**

TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .............................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................. 1

III.  APPLICABLE LAW .......................................................................................... 2

      A.    Same Transaction or Occurrence Required for Proper Joinder. ............. 2

      B.    Transfer for the Convenience of the Parties and Witnesses. .................. 3

IV.   ARGUMENT ....................................................................................................... 4

      A.    The AT&T Defendants Should Be Severed From the Verizon Defendants
            Because Williamson Has Not Satisfied, and Cannot Satisfy, the "Same
            Transaction" Test of Rule 20 .................................................................. 4

      B.    Post-Severance, Williamson's Action Against the AT&T Defendants
            Should Be Transferred to the Northern District of Texas. ...................... 7

            1.    Legal Analysis ............................................................................... 8

V.    CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*,
326 F. Supp. 2d 525 (S.D.N.Y. 2004).......................................................................................9

*Anadigics, Inc. v. Raytheon Co.*
903 F. Supp. 615 (S.D.N.Y. 1995) ......................................................................................4, 8

*Androphy v. Smith & Nephew, Inc.*,
31 F. Supp. 2d 620 (N.D. Ill. 1998) .........................................................................................6

*Blesedell v. Mobil Oil Co.*,
708 F. Supp. 1408 (S.D.N.Y. 1989)......................................................................................3, 4

*Children's Network, LLC v. PixFusion LLC*,
722 F. Supp. 2d 404 (S.D.N.Y. 2010).......................................................................................4

*Colt Def. LLC v. Heckler & Koch Def., Inc.*,
No. 2:04cv258, 2004 U.S. Dist. LEXIS 28690 (E.D. Va. Oct. 22, 2004) .................................6

*EIT Holdings LLC v. Yelp!*,
No. 10-05623, 2011 U.S. Dist. LEXIS 64034 (N.D. Cal. May 12, 2010)................................6

*Ginett v. Computer Task Group, Inc.*,
962 F.2d 1085 (2d Cir. 1985)..............................................................................................3, 4

*Golden Scorpio Corp. v. Steel Horse Bar & Grill*,
596 F. Supp. 2d 1282 (D. Ariz. 2009) ......................................................................................4

*Ho Keung, TSE v. eBay, Inc.*,
No. 11-01812, 2010 U.S. Dist. LEXIS 59675 (N.D. Cal. June 2, 2011 )................................6

*Ho Keung, TSE v. eBay, Inc.*,
No. C-11-01812, 2011 U.S. Dist. LEXIS 59675 (N.D. Cal. 2011) ..........................................4

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009)..............................................................................................11

*In re TS Tech*,
551 F.3d 1315 (Fed. Cir. 2005)..........................................................................................8, 11

*LG Elecs., Inc. v. First Int'l Computer, Inc.*,
138 F. Supp. 2d 574 (D.N.J. 2001) .........................................................................................12

*Neil Bros Ltd. v. World Wide Lines*,
425 F. Supp. 2d 325 (E.D.N.Y. 2006) ...................................................................11

*New Jersey Mach. Inc. v. Alford Indus. Inc.*,
1991 WL 340196 (D.N.J. Oct. 7, 1991) .................................................................5

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith*,
564 F. Supp. 1358 (D. Del. 1983) ........................................................................5, 6

*Pergo, Inc. v. Alloc, Inc.*,
262 F. Supp. 2d 122 (S.D.N.Y. 2003) ......................................................3, 4, 5, 14

*Philips Elecs. N. Am. Corp. v. Contec Corp.*,
220 F.R.D. 415 (D. Del. 2004) ..............................................................................5

*Pilates, Inc. v. Pilates, Inst., Inc.*,
891 F. Supp. 175 (S.D.N.Y. 1995) ......................................................................4, 8

*Robinson v. Johnson*,
2009 WL 874530 (E.D.Va. 2009) ...........................................................................6

*SB Designs v. Reebok Int'l, Ltd.*,
305 F. Supp. 2d 888 (N.D. Ill. 2004) ......................................................................6

*Spread Spectrum Screening, LLC v. Eastman Kodak Co.*,
2010 WL 3516106 (N.D. Ill. Sept. 1, 2010) .........................................................4, 5

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
917 F.2d 1574 (Fed. Cir. 1990) ..............................................................................8

*Zepherin v. Greyhound Lines, Inc.*,
415 F. Supp. 2d 409 (S.D.N.Y. 2006) ...................................................................14

**STATUTES**

28 U.S.C. § 1400 ..............................................................................................................8

28 U.S.C. § 1404 ...................................................................................................1, 3, 7, 8

35 U.S.C. § 299 ............................................................................................................3, 5

Smith-Leahy America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) ...........3, 5

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure Rule 20 ......................................................................2, 4

Federal Rule of Civil Procedure 21 ..........................................................................1, 3, 6

-iii-

4 Moore's Federal Practice § 20.02[1][a] (2011) ...........................................................................3

Miscellaneous Order No. 62 ...........................................................................................13

*District Courts Selected for Patent Pilot Program*, USCOURTS.GOV ...........................................13

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Pursuant to Federal Rule of Civil Procedure 21 and 28 U.S.C. § 1404, Defendants AT&T Operations, Inc. and AT&T Services, Inc. (collectively, "the AT&T Defendants") respectfully submit this memorandum of law in support of their motion to sever and transfer the claims against AT&T Operations and AT&T Services to the Northern District of Texas, Dallas Division.

## I.     INTRODUCTION

Because the claims against the AT&T Defendants and the claims against the Verizon Defendants do not relate to the same transaction or occurrence, the disparate defendants in this case are improperly joined and should be severed. Indeed, the only commonality between the AT&T Defendants and the other defendants in this case is that they are accused of infringing the same patents. Courts in the Second Circuit have consistently held that this is an improper basis for joining unrelated defendants. Post-severance, the claims against the AT&T Defendants should be transferred to the United States Court for the Northern District of Texas for the convenience of witnesses and parties.

## II.     FACTUAL BACKGROUND

On July 19, 2011, Williamson filed a complaint (the "Complaint") against Verizon Communications, Inc., Verizon Services Corp., Verizon Corporate Resources Group LLC, Verizon Data Services LLC, Verizon New York Inc. (collectively, the "Verizon Defendants"), AT&T Inc., AT&T Operations, Inc., and AT&T Services, Inc. in the Southern District of New York. Williamson's Complaint includes allegations regarding United States Patent Numbers 6,370,571 ("the '571 patent"), 7,225,275 ("the '275 patent"), 7,529,856 ("the '856 patent"), and 7,873,749 ("the '749 patent") (collectively, the "patents-in-suit").

The AT&T Defendants and the Verizon Defendants offer distinct products and services—a fact reflected in the Complaint's separate and unique allegations against the AT&T Defendants (the "U-verse" product) and the Verizon Defendants (the "FiOS" product). The sole commonality between the separate claims is that both the AT&T Defendants and the Verizon

Defendants are accused of infringing the same patents.  Williamson has not alleged that the AT&T Defendants and the Verizon Defendants are jointly or severally liable, conspired with each other, or acted in concert in any way.  Rather, Williamson alleges that each defendant directly infringes by "importing, selling, offering for sale and/or using" its own separate products and services (which in many markets are directly competitive products).  *See* Complaint, ¶¶ 47-48, 54-55, 61-62, 68-69 (accusing the Verizon Defendants' FiOS product of infringing the patents-in-suit); *cf.* Complaint ¶¶ 75-76, 82-83, 89-90, 96-97 (accusing the AT&T Defendants' U-verse product of infringing the patents-in-suit).

Williamson makes many other allegations regarding pre-suit interactions between At Home Corporation and AT&T Corp.[1]  *See* Complaint, ¶¶ 34-42.  Those allegations relate solely to the AT&T Defendants.

The AT&T Defendants do not make, use, sell, offer for sale, or import into the Southern District of New York any of the accused products or services.  Decl. of Mair at ¶¶ 8-14.  Indeed, the accused U-verse product is not even offered anywhere in the State of New York, and none of the AT&T Defendants make, use, market or sell any video content delivery systems or related products or technologies in New York.  (Decl. of Mair at ¶¶ 8-14).

The AT&T Defendants move the Court to sever Williamson's cause of action against AT&T Operations, Inc. and AT&T Services, Inc. and transfer it to the Northern District of Texas for the convenience of the parties and witnesses.

### III.   APPLICABLE LAW

### A.   Same Transaction or Occurrence Required for Proper Joinder.

Federal Rule of Civil Procedure Rule 20(a)(2) allows the joinder of multiple defendants only if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the

---

[1] AT&T Corp., not a party to this suit, was acquired by AT&T Inc. subsequent to the occurrence of the alleged actions described in the Complaint.  AT&T Corp. is now a subsidiary of AT&T Inc.  Decl. of Threlkeld at ¶ 2.

action."  Both the 'same transaction' test and the 'common question' test must be met for joinder to be proper.  *See Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1095 (2d Cir. 1985); *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989).  Courts in the Southern District of New York have held that the fact that two parties may manufacture or sell similar products, and that these sales or production may have infringed the same patent owned by the plaintiff, is *not sufficient* to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).  *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 127-28 (S.D.N.Y. 2003).  This universal principle was recently codified, specifically in connection with patent infringement cases, in 35 U.S.C. § 299.  *See, e.g.* 35 U.S.C. § 299(b) ("Allegations Insufficient for Joinder – For purposes of this subsection, accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit").[2]  Where a party has been improperly joined, Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *see also* 4 Moore's Federal Practice § 20.02[1][a] (2011) ("The rule governing misjoinder and nonjoinder of parties expressly provides that the remedy for misjoinder is . . . severance.").

**B.      Transfer for the Convenience of the Parties and Witnesses.**

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In balancing the relative convenience of two venues, courts in the Second Circuit consider nine private and public interest factors.  These factors include (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means

---

[2]  Although this recent codification in the Smith-Leahy America Invents Act does not apply to this case, the provision was intended to resolve a split among the circuits on this issue in favor of the New York rule cited herein above.  *See* Smith-Leahy America Invents Act, Pub. L. No. 112-29, 125 Stat. 284, 332-33 (2011).

of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based upon the totality of the circumstances.  *See Anadigics, Inc. v. Raytheon Co.* 903 F. Supp. 615, 617 (S.D.N.Y. 1995) (citing *Pilates, Inc. v. Pilates, Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995)).

## IV.    ARGUMENT

### A.    The AT&T Defendants Should Be Severed From the Verizon Defendants Because Williamson Has Not Satisfied, and Cannot Satisfy, the "Same Transaction" Test of Rule 20

The case against the AT&T Defendants should be severed from the claims asserted against the Verizon Defendants because they are not properly joined.  Federal Rule of Civil Procedure Rule 20(a)(2) allows the joinder of multiple defendants only if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the action."  Both the 'same transaction' test and the 'common question' test must be met for joinder to be proper.  *See Ginett* at 1095; *Blesedell* at 1421.  In patent infringement cases in the Second Circuit, "the fact that two parties may manufacture or sell similar products, and that the sales or production may have infringed the identical patent... is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)."  *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003); s*ee also Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404 (S.D.N.Y. 2010) ("Joinder of unrelated parties into one action is generally inappropriate where . . . the infringement of the same patent is alleged, but the products are different.").  Several other courts throughout the country have reached similar conclusions.[3]  Moreover, the principle of denying

---

[3] *See, e.g.*, *Ho Keung, TSE v. eBay, Inc.*, No. C-11-01812, 2011 U.S. Dist. LEXIS 59675, *3-4 (N.D. Cal. 2011) (finding misjoinder and dismissing all but the first named defendant because "the accused defendants—who will surely have competing interests and strategies—also are entitled to present individualized assaults on questions of non-infringement, invalidity, and claim construction"); *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010) ("joinder is often improper where [multiple] competing businesses have allegedly infringed the same patent by selling different products."); *Golden Scorpio Corp.*

joinder to defendants who are merely accused of infringing the same patent with different products has recently been codified as 35 U.S.C. § 299.[4]  *See* Pub. L. 112-29 § 19, 195 Stat. 284, 332-33 (2011).

The rationale underlying these holdings and the recently enacted 35 U.S.C. § 299 applies here. As in *Pergo*, the AT&T Defendants and the Verizon Defendants are competitors, and they separately produce and sell different competing video content delivery products and services. Moreover, like the *Pergo* case, Williamson does not claim—and cannot claim—that the AT&T Defendants are related to any of the Verizon Defendants, conspired or acted in concert with any of the Verizon Defendants to infringe the patents-in-suit, or are jointly or severally liable with any of the Verizon Defendants.  The AT&T Defendants and the Verizon Defendants act independently of each other in developing and offering their distinct and competing accused products—namely, the AT&T Defendants' U-verse product and the Verizon Defendants' FiOS product.  Moreover, the AT&T Defendants and the Verizon Defendants are alleged to directly and indirectly infringe based on their *own* respective and separate actions.  Joinder is thus improper at least because each of the AT&T Defendants' and the Verizon Defendants' separate accused products and services will be subjected to a separate and independent infringement analysis, involving different evidence and witnesses.  *See, e.g., Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 WL 3516106, at *6 (N.D. Ill. Sept. 1, 2010) (finding improper

---

*v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1285 (D. Ariz. 2009) ("Allegations against multiple and unrelated defendants for acts of patent, trademark, and copyright infringement do not support joinder under Rule 20(a)."); *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 418 (D. Del. 2004) (granting a motion to sever because "the only connection between [defendants] is that they may have infringed the same patents . . . , which is an insufficient basis to join unrelated parties as defendants in the same lawsuit"); *New Jersey Mach. Inc. v. Alford Indus. Inc.*, 1991 WL 340196, at *2 (D.N.J. Oct. 7, 1991) (holding in a patent infringement suit that "claims of infringement against unrelated defendants, involving different machines, should be tried separately against each defendant"); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith*, 564 F. Supp. 1358, 1371 (D. Del. 1983) ("allegations of infringement against two unrelated parties based on different acts do not arise from the same transaction").

[4] Section 19 of the recently-enacted Smith-Leahy America Invents Act applies only to cases filed on or after September 16, 2011.  The principle embodied in the statute, however, is nevertheless the law in the Second Circuit, *see, e.g., Pergo* at 128, and thus, should control for the joinder issues raised by the AT&T Defendants in this motion.

joinder under Rule 20 and severing claims pursuant to Rule 21 where "[t]he accused infringing software, other evidence and witnesses are all different and unique").

Additionally, Williamson makes a number of distinct factual allegations against the AT&T Defendants concerning pre-suit communications and a purported relationship between At Home Corporation and the AT&T Defendants that do not apply to the Verizon Defendants. *See* Complaint, ¶¶ 34-42. Because Williamson does not make similar allegations against the Verizon Defendants, its case in support of willful infringement against the Verizon Defendants will likely be vastly different. *See Ho Keung, TSE v. eBay, Inc.*, No. 11-01812, 2010 U.S. Dist. LEXIS 59675, *6-7 (N.D. Cal. June 2, 2011 ) (differing willful infringement allegations and accused conduct supports severance); *EIT Holdings LLC v. Yelp!*, No. 10-05623, 2011 U.S. Dist. LEXIS 64034, *5-6 (N.D. Cal. May 12, 2010) (severance supported by different willful infringement issues and accused conduct among the defendants).

Even if improperly joining defendants were to create limited efficiencies, that would not be sufficient reason to permit this case to proceed as currently structured. As one court held in severing multiple defendants in a patent case, "to the extent that considerations of judicial economy can factor into the court's decision whether to sever the claims against [the defendant], they do so only after the plaintiff has first satisfied the requirements of Rule 20(a)." *Colt Def. LLC v. Heckler & Koch Def., Inc.*, No. 2:04cv258, 2004 U.S. Dist. LEXIS 28690, at *16 (E.D. Va. Oct. 22, 2004); *see also Robinson v. Johnson*, 2009 WL 874530 (E.D.Va. 2009); *SB Designs v. Reebok Int'l, Ltd.*, 305 F. Supp. 2d 888, 892 (N.D. Ill. 2004); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358, 1371 (D. Del. 1983). As discussed above, Williamson cannot satisfy the requirements of Rule 20(a), and therefore any consideration of judicial economy does not apply. Thus, the AT&T Defendants respectfully urge this Court to sever the claims against the AT&T Defendants from those against the Verizon Defendants.

**B.      Post-Severance, Williamson's Action Against the AT&T Defendants Should Be Transferred to the Northern District of Texas.**

The case against the AT&T Defendants should be severed and transferred to the Northern District of Texas, because the relevant convenience factors under 28 U.S.C. § 1404(a) weigh heavily in favor of transfer to Texas.  Indeed, apart from the fact that Plaintiff, a bankruptcy trustee, maintains law offices in the Southern District of New York, New York has no connection whatever to this dispute.

AT&T's world headquarters are in Dallas, Texas, a few blocks away from the Federal Courthouse in the Dallas Division of the Northern District of Texas.  Transfer is appropriate because Dallas is clearly a more convenient venue than the Southern District of New York for this litigation.  The vast majority of the evidence relevant to Plaintiff's claims against the Defendants is located in and around Dallas.  In particular, the Northern District of Texas—specifically Dallas—is home to witnesses with knowledge of the business and technical aspects of the technology at issue in this case.  Dallas is also the site of some of Defendants' key network nodes and operations centers.  For example, as discussed below, the network operations center for the AT&T Defendants' U-verse product is located in Dallas.  The Northern District of Texas is also home to documentation relevant to the accused U-verse product.  No documents or witnesses related to the accused products are located in or near New York.  Moreover, because the AT&T Defendants' products are not sold in the Southern District of New York, Williamson's cause of action—patent infringement—has no connection to New York.[5]

The fact that the plaintiff, as trustee in bankruptcy in a pending action in California, resides in New York is not enough to outweigh the convenience that would result from having this case proceed in the Northern District of Texas.  In contrast to New York, Dallas has strong connections to this lawsuit and no factors weigh heavily in favor of maintaining the action in New York.  Accordingly, the claims pertaining to the AT&T Defendants should be transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

---

[5] U-verse, the AT&T Defendants' only accused product, is not available in the Southern District New York, but is provided in Dallas. (Decl. of Mair at ¶¶ 13-14).

AT&T DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR MOTION TO
SEVER AND TRANSFER                                                                    Case No. 11-CV-4948

1.        **Legal Analysis**

28 U.S.C. § 1404(a) governs transfers of venue in patent infringement lawsuits. 28 U.S.C. § 1404(a); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2005). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Williamson accuses the AT&T Defendants of infringement by making, using, offering to sell, and selling certain "systems and/or methods to deliver video content," specifically naming the AT&T Defendants' U-verse offerings in its Complaint, and alleging that these systems are offered throughout the United States. *See* Complaint at ¶¶ 75, 82, 89, 96. The Northern District of Texas, Dallas Division is unquestionably a venue in which this lawsuit originally "might have been brought." *See* 28 U.S.C. § 1404(a). Because Dallas is a proper venue,[6] the only issue presented here is whether Dallas is clearly more convenient than New York. *In re TS Tech*, 551 F.3d at 1319.

In balancing the relative convenience of two venues, courts in the Second Circuit consider nine private and public interest factors. These factors include (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based upon the totality of the circumstances. *Anadigics, Inc. v. Raytheon Co.* 903 F. Supp. 615, 617 (S.D.N.Y. 1995) (citing *Pilates, Inc. v. Pilates, Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995)). Four of these factors strongly favor transferring this lawsuit to Dallas, while the remaining factors are either neutral or

---

[6] 28 U.S.C. § 1400 sets forth the minimum requirements for proper venue in patent cases. Under the first part of 28 U.S.C. § 1400(b), venue in a patent infringement case is proper anywhere that the "defendant resides." Interpreting this statute, the Federal Circuit has held that corporations reside in any district in which they are subject to personal jurisdiction at the commencement of the lawsuit. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). Thus, Dallas is a proper venue because the AT&T Defendants were subject to personal jurisdiction there at the time this lawsuit commenced.

AT&T DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR MOTION TO
SEVER AND TRANSFER                                              Case No. 11-CV-4948

are afforded little weight, and provide no support for keeping this lawsuit in New York.  Given the strong reasons for transfer to Dallas, and the absence of any competing reasons to keep this lawsuit in New York, this Court should grant the AT&T Defendants' motion to transfer.

> **i.    The convenience of witnesses dictates transfer to Dallas.**

"The convenience of party and nonparty witnesses is usually the most important consideration in deciding a motion to transfer venue."  *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004).  Transfer to the Northern District of Texas will dramatically increase convenience and reduce costs of attendance for witnesses in this case.  Many witnesses concerning Williamson's allegations against AT&T live and work in very close proximity to Dallas, while none are in or near New York.  Of the approximately 1000 AT&T employees who work full or part time on the U-verse product, more than 500 are based in the Dallas suburbs of Irving and Richardson—all in or in close proximity to the Northern District of Texas. Decl. of Mair at ¶¶ 5-6. No such employees are based in or near New York. *Id.* at ¶ 6. AT&T has many employees in Irving who oversee routing and switching of packets within the U-verse subscriber access network.  These include Tom McCrady (Director of Video Operations Center IP Ops), who is likely to be an important witness concerning IP routing and packet switching in the U-verse access network.[7]  *Id.* at ¶ 7a.  His seven Area Managers and the 122 Network Support Engineers they manage, also in Irving, are responsible for monitoring and maintaining various aspects of the AT&T Defendants' U-verse network and can also provide testimony concerning routing and packet switching in the U-verse access network.  *Id.* at ¶ 7b.

Witnesses knowledgeable about key U-verse service platforms are also in Irving. Alejandro Olea (Director Video Operations Center — IP Operations) is knowledgeable about the IP Television ("IPTV") platform and the thousands of servers running IPTV applications for U-verse customers. *Id.* at ¶ 7c.  Mr. Olea may be an important witness in this case concerning the

---

[7] The AT&T Defendants do not agree that any of its networks, including U-verse, fall within the scope of the asserted claims. The witnesses and packet switched video services evidence cited in this motion relate to U-verse, the only AT&T system Williamson has identified. Witnesses and evidence cited herein would be relevant at least to establish non-infringement.

packet switched video services provided to U-verse subscribers. *Id.* at ¶ 7c. Furthermore, the 15 Area Managers and 50 Senior Network Engineers in Irving who work on the monitoring, growth, and maintenance of the IPTV platform and its applications can also provide testimony about the packet switched video services provided by U-verse. *Id.* at ¶ 7c. Mr. Olea is also responsible for IPTV project management and service operations in Irving. *Id.* at ¶ 7c. Mr. Olea and the three Area Managers and Senior Network Engineers working with him in this area will be able to provide testimony about the packet switched video services provided to U-verse subscribers. *Id.* at ¶ 7c.

In addition, the AT&T Defendants' witnesses who can testify about new Video Hub Office ("VHO") build activities and all U-verse network change management are also in Irving. *Id.* at ¶ 7d. This includes Steve Davis (Director Network Operations Center) and his team of nine Area Managers that support the U-verse VHO and SHO facilities. Davis and his team will be able to testify about locations, plans, and operations for VHOs that provide packet switched video services. *Id.* at ¶ 7d.

Additionally, witnesses knowledgeable about the design, implementation, and management of the U-verse product are located in Dallas. This includes Jeff Weber (Vice President of U-verse and Video Products). Mr. Weber has been involved various roles related to the design, development, integration, testing, and commercial introduction of the U-verse service since 2004. *Id.* at ¶ 7e. Mr. Weber will be able to testify about these aspects of the U-verse service.

None of the individuals named above who are potential witnesses for the AT&T Defendants live or work within 100 miles of New York. *Id.* at ¶ 7f. In contrast, many potential AT&T Defendants' witnesses with knowledge of the accused system live and work within 100 miles of Dallas.[8] *Id.* at ¶¶ 5-6, 7f.

Each of the patents-in-suit names Milo S. Medin as the inventor. Milo Medin is currently

---

[8] Tom McCrady lives in Lewisville, 20 miles from Dallas. Decl. of Mair at ¶ 7a. Alejandro Olea lives in Dallas. *Id.* at ¶ 7c. Steve Davis lives in Frisco, 30 miles from Dallas. *Id.* at ¶ 7d.

Vice President of Access Services at Google, Inc., in Mountain View, California. Decl. of Johnson at ¶ 2. As the named inventor on all four patents-in-suit, Milo Medin is likely to be an important witness in this case. Because New York is almost twice as far from Mountain View, California than Dallas (1200 miles farther, in fact), traveling to Dallas for purposes of this case would be less burdensome than traveling to New York. Accordingly, the relative convenience of witnesses—"usually the most important consideration in deciding a motion to transfer venue"— strongly supports transfer of this case to the Northern District of Texas, Dallas Division.

### ii. The relative ease of access to sources of proof dictates transfer to Dallas.

This factor favors transfer to the Northern District of Texas because "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338 (Fed. Cir. 2009) (quoting *Neil Bros Ltd. v. World Wide Lines*, 425 F. Supp. 2d 325 (E.D.N.Y. 2006)). The "relative ease of access to sources of proof" concerns the location of "physical and documentary evidence relevant to" the case. *In re TS Tech*, 551 F.3d at 1320-21. The physical location of documents and evidence is an important factor despite advances in copying and electronic data transfer technologies. *Id.* at 1321. Here, where the evidence regarding the accused U-verse product is both documentary and physical, this factor strongly favors Dallas over New York. While some of the AT&T Defendants' evidence is not located in Dallas, none of the evidence is in New York.

Document custodians for the AT&T Defendants are very close to Dallas, while none are in or near New York. Decl. of Mair at ¶¶ 7a-f, 12. Tom McCrady and his managers in Irving have documents or other evidence relating to routing and switching data packets for subscribers in the U-verse access network. *Id.* at ¶¶ 7a, 7b. Alejandro Olea and his 15 Area Managers and 50 Senior Network Engineers in Irving have documents or other evidence relating to packet switched video services provided to U-verse subscribers. *Id.* at ¶ 7c. Davis and his team of nine Area Managers in Irving have documents or other evidence relating to locations, plans, and

operations for VHOs providing packet switched video services to U-verse subscribers. *Id.* at ¶ 7d. Mr. Weber has documents or other evidence relating to the design, development, integration, testing, and commercial introduction of the U-verse service. *Id.* at ¶ 7e.

None of AT&T's document custodians regarding the accused U-verse system are located within 100 miles of New York. *Id.* at ¶ 12. And while U-verse has key network operations (including the Network Operations Center and Video Hub Offices) in or near Dallas, *Id.* at ¶¶ 7-8, 14, there are no such operations within 100 miles of New York. *Id.* at ¶¶ 9-11, 14.

In sum, key documents and document custodians for the AT&T Defendants are located in the Dallas Division of the Northern District of Texas, while no key documents or custodians for any of the AT&T Defendants are located in New York. Thus, the relative ease of access to sources of proof also weighs heavily in favor of transfer to the Northern District of Texas, Dallas Division.

### iii.   The convenience of parties weighs in favor of transfer.

The AT&T Defendants are Delaware corporations with their principal places of business in Dallas. The plaintiff is a single individual serving as trustee in bankruptcy for At Home Corporation in an action pending in the Northern District of California   (Case No. 01-32495-TC, in the United States Bankruptcy Court for the Northern District of California, San Francisco Division). The plaintiff, according to the Complaint, is a Partner with Flemming Zulack Williamson Zauderer LLP, located in New York. The balance of conveniences here clearly weighs in favor of transfer to Dallas, because it is far more convenient for one person to travel to Dallas than multiple representatives from two different companies, all primarily located in Dallas, to travel to New York.

### iv.   The locus of operative facts is in Dallas.

This factor favors transfer because the locus of operative facts is clearly in the Northern District of Texas. *See, e.g., Lighting World, Inc.*, 2001 U.S. Dist. LEXIS 16981 at *11 ("In a patent infringement case, which this is, the locus of operative facts usually lies where the allegedly infringing product was designed, developed, and produced."); *LG Elecs., Inc. v. First*

*Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 590 (D.N.J. 2001) (the "district court ought to be as close as possible to the area of the infringing device and the hub of activity centered around its production"). The AT&T Defendants have their headquarters in Dallas. As discussed above, the allegedly infringing products are managed and implemented in or near the Dallas area. Additionally, the allegedly infringing products are offered in the Dallas area. The allegedly infringing products have no connection with New York, and are not even offered in New York. Additionally, as discussed above, numerous potential witnesses are located in the Northern District of Texas. Thus, this factor weighs in favor of transfer.

### v.    The availability of compulsory process is neutral.

The availability of compulsory process for witnesses is, at this point, neutral. This case is still in its early stages, and the parties have yet to identify third party witnesses who may need to testify. It is like that no potential witnesses, however, live within 100 miles of New York since the management and implementation of the accused product occurs in Dallas.

### vi.    The relative means of the parties is neutral.

All parties are of sufficient means to conduct litigation in either New York or Texas. Thus, this factor is neutral.

### vii.    The two forums' familiarity with the governing law.

This is a federal question case, so this factor is neutral. *See Lighting World, supra,* 2001 U.S. Dist. LEXIS 16981 at *13 n. 8 ("Because patent law is federal law any district court may handle a patent case with equal skill.") (internal quotations omitted). However, the Northern District of Texas has adopted rules to ensure the efficient handling of patent cases. Effective May 1, 2007, the Northern District of Texas adopted local patent rules designed to streamline the conduct of patent cases, similar to those in effect in the Eastern District of Texas. *See* Miscellaneous Order No. 62 (N.D. Tex. April 2, 2007). The Northern District has had ample experience applying these patent local rules: since May 1, 2007, 205 patent cases have been filed in the Northern District, 165 of which are presided over by judges in the Dallas division.[9]

---

[9] The number of cases filed in the Northern District of Texas was derived using the Civil Cases

AT&T DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR MOTION TO
SEVER AND TRANSFER                                                Case No. 11-CV-4948

Additionally, like Judge Swain's Court, the Northern District of Texas was selected by the United States Congress to participate in a pilot program designed to enhance the expertise in patent law among district court judges.  *See District Courts Selected for Patent Pilot Program*, USCOURTS.GOV, http://www.uscourts.gov/News/NewsView/11-06-07/District_Courts_Selected_ for_Patent_Pilot_Program.aspx (last visited October 1, 2011).

### viii.  Plaintiff's choice of forum carries little weight.

It is well established under Second Circuit law that a plaintiff's choice of forum carries less weight in a motion to transfer venue when there is no connection between the operative facts of a case and the chosen forum.  *Zepherin v. Greyhound Lines, Inc.*, 415 F. Supp. 2d 409 (S.D.N.Y. 2006); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 130 (S.D.N.Y. 2003) ("plaintiff's choice of forum should not be granted much weight" where the operative facts occurred outside of the transferor forum).  The operative facts in this case concern the alleged infringement of the patents-in-suit.  Because the AT&T Defendants do not make, use, sell, or offer to sell the U-verse product in New York, and do not design, manufacture, or build the U-verse product in New York, there is no connection between the operative facts and the Southern District of New York.  Accordingly, Williamson's choice of forum should be granted little weight.

### ix.  Trial efficiency and the interests of justice, based upon the totality of the circumstances.

Transferring this lawsuit to Dallas would not cause any disruption to the management or trial of this case. The lawsuit is in its early stages.  No party has engaged in any briefing or discovery, nor has the Court made a ruling on any substantive issue.

Transfer to Dallas would not increase court congestion.  While it is difficult to generalize about docket congestion in different courts, there is little indication that district courts in Dallas

---

Report on the Northern District of Texas ECF/Pacer site by searching for all open and closed cases with Nature of Suit set as "830: Patent" between May 1, 2007 and September 30, 2011. Because this report is limited to searching a period of 31 days or less, the search was conducted month-by-month from May 1, 2007 to September 30, 2011 and the search results were added together.

are burdened more heavily than those in New York.  According to the Federal Judicial Center statistics for 2010 (the most recent available data), the median time from filing to trial in civil cases in which trials were completed was 20.2 months for the Northern District of Texas and 30.9 months for the Southern District of New York.  If anything, trial efficiency may be enhanced by transfer to Dallas.

## V.      CONCLUSION

For the foregoing reasons, the Court should sever the claims against AT&T Operations, Inc. and AT&T Services, Inc. from the claims against the Verizon Defendants and transfer the case against AT&T Operations, Inc. and AT&T Services, Inc. to the Northern District of Texas, Dallas Division.

Respectfully submitted,

DATED:  October 18, 2011

BAKER BOTTS L.L.P.


By:    /s/ Robert L. Maier
       Robert L. Maier
       30 Rockefeller Plaza
       New York, New York 10112
       Tele:  (212) 408-2538
       Fax:   (212) 259-2538
       robert.maier@bakerbotts.com

       Bryant C. Boren, Jr.,
       (Admitted *pro hac vice*)
       Kevin E. Cadwell
       (Admitted *pro hac vice*)
       **BAKER BOTTS L.L.P.**
       620 Hansen Way
       Palo Alto, California 94304
       Tele:  (650) 739-7501
       Fax:(650)739-7601
       kevin.cadwell@bakerbotts.com
       bryant.c.boren@bakerbotts.com

       Kurt M. Pankratz
       (Admitted *pro hac vice*)
       **BAKER BOTTS L.L.P.**
       2001 Ross Avenue
       Dallas, Texas 75201
       Tele:  (214) 953-6500
       Fax:   (214) 953-6503
       kurt.pankratz@bakerbotts.com

       *Attorneys for Defendants*
       *AT&T Inc., AT&T Operations, Inc. and*
       *AT&T Services, Inc.*