UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD A. WILLIAMSON, ON BEHALF OF AND AS TRUSTEE FOR AT HOME BONDHOLDERS' LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC., VERIZON SERVICES CORP., VERIZON CORPORATE RESOURCES GROUP LLC, VERIZON DATA SERVICES LLC, VERIZON NEW YORK INC., AT&T INC., AT&T OPERATIONS, INC., AT&T SERVICES, INC.,<br><br>Defendants. | No. 11 Civ. 4948 (LTS) (KNF) |

**PLAINTIFF'S OPPOSITION TO AT&T's MOTION TO REINSTATE THE (1) MOTION TO DISMISS AND (2) MOTION TO SEVER AND TRANSFER**

Plaintiff has made every effort to expedite the jurisdictional discovery process so that the parties can brief the merits of AT&T's withdrawn motions. It was the Plaintiff who suggested and agreed to limit jurisdictional discovery at the outset to a single set of narrowly focused interrogatories with the hopes that document and deposition discovery could be avoided. However, to Plaintiff's surprise, AT&T failed to provide substantive responses to many of Plaintiff's interrogatories, instead choosing to provide evasive answers containing mostly attorney objections. As just one example, in response to Plaintiff's straightforward interrogatory asking AT&T to either admit or deny that "AT&T Inc. directly or indirectly owns significant real property in this district, including the lots and buildings located at 811 Tenth Avenue and at 33 Thomas Street," AT&T remarkably answered that it "is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies them." To make matters worse, AT&T refused Plaintiff's invitation to produce a single 30(b)(6) witness to answer Plaintiff's follow up questions on the interrogatory responses, which Plaintiff suggested in lieu of attempting to remedy the problem through supplemental responses (which Plaintiff expected would cause the process to drag on). As a result, Plaintiff is presently not in possession of the information necessary to respond to AT&T's withdrawn motions and, therefore, cannot agree to their reinstatement or to a briefing schedule. Plaintiff reiterates its proposal that AT&T produce a 30(b)(6) witness to provide answers to follow-up questions regarding AT&T's interrogatory responses, after which the parties will jointly move for reinstatement and propose an agreed-upon briefing schedule. In order to alleviate any of AT&T's apparent concerns about the scope of the deposition, Plaintiff has already agreed to meet and confer on that subject prior to the deposition.

While Plaintiff will not burden the Court with a detailed recitation of the background facts, a brief description of the events leading to this motion is necessary to demonstrate why AT&T's withdrawn motions are not yet ripe and why AT&T's present motion should be denied.

Within two weeks after the initial scheduling conference in this case, Plaintiff served a set of narrowly focused interrogatories on AT&T seeking information necessary to respond to its withdrawn motions. To expedite the process, Plaintiff requested responses to the interrogatories within two weeks after their service. However, AT&T took 35 days to respond, and when it did, its responses were rife with attorney objections and lacking in meaningful information. For example, Plaintiff's interrogatory 3 asked AT&T to admit or deny certain allegations in the Complaint[1], including whether:

- AT&T Inc. directly or indirectly owns significant real property in this district, including the lots and buildings located at 811 Tenth Avenue and at 33 Thomas Street

- AT&T Inc. is listed on the New York Stock Exchange

- AT&T Inc. has availed itself of the New York Courts by asserting counterclaims in at least the following actions in the Southern District of New York: *The Farmers' Telephone Company of Richville, Iowa, Inc. et al. v. AT&T Inc.*, Case No. 1:07-cv-00859; *All American Telephone Company, Inc. et al. v. AT&T, Inc.*, Case No. 1:07-cv-00861; and *Aventure Communication Technology, L.L.C. v. AT&T, Inc.*, Case No. 1:07-cv-01780.

Instead of simply admitting or denying these basic facts, facts which are both easily ascertainable and directly relevant to AT&T's withdrawn motions, AT&T stated that it "is without sufficient knowledge or information to form a belief as to the truth or falsity of [each of the above allegations] and therefore denies them." AT&T Responses at 26. When AT&T's counsel was questioned during the parties' January 5, 2012 meet-and-confer about these

---

[1] Prior to that time, AT&T Inc. had not answered these allegations since it filed its withdrawn motions in lieu of answering the Complaint. However, that does not explain why AT&T Inc. has not yet answered the Complaint following the withdrawal of its motions.

2

responses, they were incapable of providing any justification for their gross deficiencies. It is these types of non-responses about which Plaintiff intends to depose an AT&T corporate representative during a 30(b)(6) deposition to obtain information necessary to respond to AT&T's withdrawn motions.

In addition to refusing to provide substantive responses to many of Plaintiff's interrogatories, AT&T also made materially false statements in certain of its responses. Interrogatory 14 asked AT&T to describe any research and development conducted by AT&T regarding IPTV (the technology at issue in this case) in the State of New York, or within 100 miles of the Southern District of New York, including in AT&T facilities in New Jersey. In response, AT&T asserted that:

> No technical research and development conducted by AT&T regarding U-verse has taken place in the State of New York or within 100 miles of the Southern District of New York. Researchers at the AT&T Labs in New Jersey are engaged in research regarding future products and technologies that are not related to any past or current implementations of U-verse or other issues in this case.

AT&T's Responses at 39.

However, information gathered by Plaintiff from public sources demonstrates this statement to be plainly false. As Plaintiff pointed out to AT&T in its January 4, 2012 letter, numerous research papers regarding IPTV have been published by AT&T Labs in New Jersey, some of which identify AT&T U-verse by name. Therefore, AT&T's interrogatory response is simply untrue, and requires further clarification through a 30(b)(6) deposition.[2]

---

[2] In its January 5, 2012 letter, AT&T essentially admitted that its response was wrong when it stated that the papers cited by Plaintiff were "wholly unrelated to *the patents in suit*" (not to U-verse). Even that statement, however, is not true since the AT&T Labs publications describe components of the accused instrumentality which practice elements of the asserted claims, *e.g.*, a high-speed network backbone and regional servers.

3

Many of AT&T's responses were also plainly evasive, placing Plaintiff in a position where it is not able to determine some of the most basic facts relevant to AT&T's withdrawn motions. For example, Plaintiff's interrogatory 15 asked AT&T to describe any plans to offer U-verse (the accused instrumentality) to customers in New York State. Rather than either stating that it has no such plans or describing the nature of any such plans, AT&T responded by stating that the "AT&T Defendants are not [currently] authorized by the FCC to offer U-verse in the State of New York." When challenged on this point in Plaintiff's January 4 letter, AT&T responded that the request seeks "highly-sensitive competitive and business information regarding prospective business plans" and that determining a response would "require conversations with nearly all high-level AT&T employees, including all officers and directors." Whether AT&T has plans to introduce the accused U-verse services to customers in New York is a simple and straightforward question, and is highly relevant to AT&T's withdrawn motions. Follow-up as to AT&T's nonresponse is therefore necessary before Plaintiff can reasonably be expected to respond to AT&T's motions.

AT&T complains that certain of the information sought by Plaintiff is "wildly overbroad." AT&T severely exaggerates the scope of Plaintiff's interrogatories. However, rather than spending the time to go through Plaintiff's interrogatories one by one, Plaintiff reiterates its suggestion that the parties meet and confer prior the 30(b)(6) deposition to work out any issues regarding the scope of the interrogatories.

In sum, any delay in concluding jurisdictional discovery is of AT&T's own making. Plaintiff is determined to complete that discovery in short order and, to that end, has made a reasonable suggestion for AT&T to produce a single 30(b)(6) witness to answer follow-up questions to AT&T's interrogatory responses (and to meet and confer prior to that deposition to

4

work out any issues concerning its scope). Once that deposition is complete, Plaintiff expects that the parties will be in a position to swiftly move for reinstatement of AT&T's motions and propose an agreed-upon briefing schedule. Without such a deposition, AT&T's motions are simply not ripe for briefing. In the alternative, Plaintiff is amenable to AT&T providing meaningful and non-evasive supplemental responses to Plaintiff's interrogatories, although their conduct to date suggests a strident unwillingness to do so.

Dated: February 16, 2012

By: _____

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Joshua L. Raskin (JR-4613)
Chad Johnson (CJ-3395)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Chad@blbglaw.com
Joshua@blbglaw.com
Phone: (212) 554-1400
Fax: (212) 554-1444

BEIRNE, MAYNARD & PARSONS, LLP

William C. Norvell, Jr. (admitted *pro hac vice*)
Scott D. Marrs (admitted *pro hac vice*)
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056-3000
Phone: (713) 623-0887
Fax: (713) 960-1527

*Attorneys for Richard A. Williamson, on Behalf of and as Trustee for At Home Bondholders' Liquidating Trust*