UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD A. WILLIAMSON, ON BEHALF OF AND AS TRUSTEE FOR AT HOME BONDHOLDERS' LIQUIDATING TRUST<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>VERIZON COMMUNICATIONS INC., VERIZON SERVICES CORP., VERIZON CORPORATE RESOURCES GROUP LLC, VERIZON DATA SERVICES LLC, VERIZON NEW YORK INC., AT&T INC., AT&T OPERATIONS, INC., AT&T SERVICES, INC.,<br><br>　　　　　　Defendants. | CIVIL ACTION<br><br>ECF CASE<br><br>Civil Action No. 1:11-cv-04948 (LTS)(KNF)<br><br>**AT&T DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO <u>SEVER AND TRANSFER</u>** |

I.     **INTRODUCTION**

The AT&T Defendants[1] respectfully submit this Reply memorandum in support of their motion to sever and transfer the claims against them to the Northern District of Texas, Dallas Division (Dkt. No. 47). Because the claims against the AT&T Defendants and the claims against the Verizon Defendants do not relate to the same transaction or occurrence, the two defendant groups – competitors who offer separate and different accused services – are improperly joined and should be severed.

Plaintiff Williamson in its opposition disregards the near-universal precedent regarding the joinder requirements of Rule 20 – which is applied uniformly in the Second Circuit – and instead focuses on minority view decisions from the Eastern District of Texas, including a case that has been legislatively abrogated by 35 U.S.C. § 299. The result Plaintiff seeks would require a seismic shift in the law as applied in this District.

Plaintiff also argues that the case has progressed significantly through preliminary contention exchanges and discovery matters and that severance is therefore inappropriate. But it is by Plaintiff's own heel-dragging that briefing is only now being completed, nearly six months after the AT&T Defendants brought this motion in October of 2011. In the intervening months, Plaintiff demanded jurisdictional discovery, received that discovery, and then repeatedly refused to move forward with the briefing of these motions in the guise of its unreasonable claim that it needed more discovery. AT&T was ultimately forced to move over Plaintiff's objection to reinstate these motions (Dkt. No. 68), and only then, upon the Court's order denying additional discovery, was briefing resumed. Plaintiff should not profit from its tactical delay.[2]

---

[1]     This motion was brought by AT&T Operations, Inc. and AT&T Services, Inc.

[2]     Moreover, the case is not nearly as far along as Plaintiff claims. The parties as of this briefing are still negotiating a stipulated protective order. Although the parties have exchanged relatively small volumes of documents, and in particular those required with early contentions under the N.D. Cal. Local Patent Rules implemented in this case and the instant motion, the vast majority of document productions have not yet been made. No depositions have been noticed. In any event, the work the parties have done is not lost if the case is transferred to the Northern District of Texas.

-2-

Additionally, the facts weigh heavily in favor of transfer: AT&T's accused U-verse service is not even offered anywhere in New York State, and AT&T's major hubs, together with the employees and documents most directly related to U-verse, are all centered in and around Dallas, Texas.[3]  Moreover, while Plaintiff argues that New York is the more convenient venue for itself and the named inventor on its patents, Plaintiff previously filed several patent infringement actions in multiple different district courts in California – one of those cases remains pending, and the other involved one of the very same patents at issue in this case (and, accordingly, the very same inventor).  The only difference in this case, which is the only patent case Plaintiff has ever filed in New York, is that its outside counsel is based in New York.

Ultimately, all of the people and information that bear on the accused AT&T U-verse service are elsewhere, and the Northern District of Texas is by far the more appropriate venue.

## II.   ARGUMENT

### A.  AT&T's Motion To Sever Should Be Granted

#### 1. The Controlling Precedent Indisputably Supports Severance

The controlling law surrounding Fed. R. Civ. P. 20 clearly dictates that severance in this case is appropriate, because the alleged infringements by the two defendant groups do not arise out of the same transaction or occurrence.  Plaintiff asserts that its claims "as to each set of defendants involve common questions of fact and law, and include overlapping evidence and witnesses," such that Rule 20 is satisfied.  Plaintiff's Opp. at 7-8.  But the law says otherwise.

As courts in the Southern District of New York have uniformly held, the fact that two parties sell similar products accused of infringing the same patent owned by the plaintiff is _not sufficient_ to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a). *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 127-28 (S.D.N.Y. 2003); *see also Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404 (S.D.N.Y. 2010).

---

[3]   Additionally, to the extent Plaintiff at one time had documents in New York, Defendants recently were informed that of hundreds of boxes of At Home documents bearing on issues in this case, only a mere five remain – the rest have been destroyed, raising serious issues of spoliation that the Defendants are investigating.  *See* Ex. 2, 4/17/12 Ltr. of Maier to Raskin.

This principle was recently codified specifically in connection with patent infringement cases in 35 U.S.C. § 299.  *See, e.g.* 35 U.S.C. § 299(b) ("accused infringers may not be joined in one action as defendants . . . based solely on allegations that they each have infringed the patent or patents in suit").  Although Plaintiff argues that the recent codification in § 299 does not apply to this case (because this case was filed prior to its enactment), the provision was intended to resolve a split among the circuits on this issue in favor of the majority rule – which has always been the rule in the Second Circuit.  *See Body Sci. LLC v. Boston Sci. Corp.*, --- F. Supp. 2d ----, 2012 WL 718495, at *3 (N.D. Ill. Mar. 6, 2012) (internal quotations and citations omitted).[4]

In response to the overwhelming weight of case law in favor of severing these misjoined defendant groups, Plaintiff cites decisions from the minority view jurisdiction (*i.e.*, the Eastern District of Texas).[5]  But that has *never* been the law of this District.

Moreover, the Federal Circuit just last week granted a petition for mandamus and directed the Eastern District of Texas court to reconsider a motion to sever and transfer in a case that, like this one, was filed prior to enactment of 35 U.S.C. § 299.  *See In Re EMC Corp., Decho Corp., and Iomega Corp.*, --- F.3d ----, 2012 WL 1563920 (Fed. Cir. 2012).   There the Federal Circuit criticized the Eastern District of Texas minority view approach, and clearly articulated that allegations of infringement of the same patent by different products of different competitor defendants do not satisfy the "same transaction or occurrence" requirement of Rule 20:

---

[4]   *See also Genetic Techs. Ltd. v. Agilent Techs., Inc.*, No. 11-cv-1389-WJM-KLM, 2012 WL 1015355, at *3 (D. Colo. Mar. 23, 2012) (noting the "majority view" regarding Rule 20 "is reflected in the AIA"); H.R. Rep. No. 112-98, at 54-55, n.61 (June 1, 2011), *available at* http://www.uspto.gov/aia_implementation/crpt-112hrpt98-pt1.pdf (last accessed May 7, 2012).

[5]   *See, e.g.,* Plaintiff's Opp. at 9-10, *citing Lodsys v. Brother Int'l Corp., et al.,* Case No. 2:11-cv-90-JRG, 2012 Dist. Lexis 31456 (E.D. Tex. Mar. 8, 2012).  That case was filed in February of 2011;  35 U.S.C. § 299 applies only to cases filed after September 16, 2011.  Additionally, Plaintiff also relies on the unpublished decision on a Petition for Writ of Mandamus in *In re Google Inc*., 412 Fed. Appx. 295, 296 (Fed. Cir. 2011), for the proposition that "adjudicating infringement . . . will involve substantially overlapping questions of law or fact." 628 F.3d 1342, 1346 Fed. Cir. 2010)).  Plaintiff's Opp. at 6.  But again, that case, as with others cited by Plaintiff, revolves around a decision on severance in the minority jurisdiction of the Eastern District of Texas, in a case filed prior to enactment of the new 35 U.S.C. § 299.  In fact, the decision in *Eolas Tech. Inc. v. Adobe Systems, Inc.* cited by Plaintiff in its opposition brief was one of the decisions identified by Congress as legislatively abrogated by § 299. H.R. Rep. No. 112-98, at n. 61 (June 1, 2011), *available at* http://www.uspto.gov/aia_implementation/crpt-112hrpt98-pt1.pdf (last accessed on April 30, 2012).

> We agree that joinder is not appropriate where different products or processes are involved. … Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical.

*Id.* at 15. With its *EMC* opinion, the Federal Circuit effectively wiped all of the pre-AIA joinder cases out of the Eastern District of Texas off the books.

### 2. The Supposed Commonalities Identified By Plaintiff Are All A Product Of Plaintiff's Assertion Of The Same Patents

Plaintiff's other response to the clear precedent is to argue that there are a variety of commonalities between its allegations against AT&T and against Verizon. But those supposed commonalities all boil down to the fact that Plaintiff alleges infringement of the same patents – which is not sufficient to join unrelated defendants in the same lawsuit pursuant to Rule 20(a).

For instance, Plaintiff argues that its claims against the two sets of Defendants "include the same patients-in-suit" (Plaintiff's Opp. at 7); that its claims are directed towards the sale of "related" products (which are in no way related, other than that they are accused of infringing the same patents[6]) (*id.*); that the Court will need to address the same issues of claim construction and validity (*id*. at 8); that the same inventor will need to be deposed (*id*. at 9); and that the same factors will be considered in determining damages positions for the same patents (*id*. at 9).

Of course, these same commonalities would arise in *every* patent case in which multiple unrelated defendants are accused of infringing the same patent. The rule Plaintiff seeks would wholly vitiate Fed R. Civ. P. 20 and 35 U.S.C. § 299 and would be contrary to the established case law, since it would mean that joinder of different defendants would be proper in *any* patent case so long as they are accused of infringing the same patent. As the Federal Circuit recently reminded us, that is not the law. *See In Re EMC,* 2012 WL 1563920 at *11("[T]he mere fact that

---

[6]      Plaintiff in its Statement Of Facts makes numerous bald assertions, and AT&T objects and disagrees with the vast majority of these so-called facts. For example, Plaintiff argues that the U-verse and FiOS network products are "based on similar network architectures." Plaintiff's Opp. at 2. But these networks are different in virtually every important respect. Beyond that, Plaintiff inaccurately alleges as "facts" that the two defendant groups each perform "caching" and "multicasting" of content. AT&T denies these allegations, among others.

infringement of the same claims of the same patent is alleged does not support joinder, even though the claims would raise common questions of claim construction and patent invalidity.").

### 3. Plaintiff's Other Argument – Purportedly Based on Judicial Economy – Stems From Its Own Delay and Is Not Properly Considered Here

Finally, Plaintiff's judicial economy arguments seek to capitalize on Plaintiff's own delay and to penalize AT&T in this motion for cooperating with the other parties in this case and for complying with the Court's scheduling orders. However, because Plaintiff has not satisfied Rule 20(a), its judicial economy arguments are irrelevant. *Colt Def. LLC v. Heckler & Koch Def., Inc.*, No. 2:04cv258, 2004 U.S. Dist. LEXIS 28690, at *16 (E.D. Va. Oct. 22, 2004) (emphasis supplied) ("to the extent that considerations of judicial economy can factor into the court's decision whether to sever the claims against [the defendant], they do so only after the plaintiff has first satisfied the requirements of Rule 20(a).").[7]

As an initial matter, Plaintiff overstates the progress of this case. Although discovery is underway, despite Plaintiff's claim in its opposition brief (at p. 3),[8] the vast majority of general document productions from all parties have not yet proceeded. In fact, Plaintiff has disclosed it is some weeks from even beginning to review the bulk of its documents, with production to occur some time later. Additionally, Plaintiff argues that the "Court has scheduled a *Markman* hearing for August 4, 2012." *See* Plaintiff's Opp. at 5, citing Raskin Decl. thereto at ¶11. But no such hearing has been scheduled – in fact, Plaintiff's identified date falls on a Saturday.

Plaintiff also ignores the critical point that, regardless of where this case proceeds, the parties' exchanges of these preliminary contentions and materials are equally applicable to the case. The ground covered by the parties thus far will not be lost if AT&T's motions are granted.

---

[7]   *See also Robinson v. Johnson*, 2009 WL 874530 (E.D.Va. 2009); *SB Designs v. Reebok Int'l, Ltd.*, 305 F. Supp. 2d 888, 892 (N.D. Ill. 2004); *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358, 1371 (D. Del. 1983).

[8]   Plaintiff argues based on its own self-serving e-mail communication that "the remainder of" AT&T's document production is "likely to occur 'within a few weeks.'" Plaintiff's Opp. at 3. But as confirmed in the unquoted portion of Mr. Raskin's e-mail at Ex. 3 to Plaintiff's Opposition brief, the parties instead discussed that AT&T hoped to "commence a rolling production" – and not complete its document production – within the coming weeks.

In reality, the parties have not even begun claim construction briefing; have not begun depositions; have not exchanged large volumes of documents; and have not exchanged substantive discovery responses. The Court has not had to address any of the substantive patent issues of claim construction, infringement or validity – the only issues that have been before the Court are discovery and scheduling issues and these jurisdictional motions. Accordingly, Plaintiff's judicial economy arguments based on the progress of this case are unfounded.

Beyond that, Plaintiff's stated concerns about judicial economy are suspect given that all of the milestones identified by Plaintiff occurred *after* AT&T diligently brought this motion in October, 2011. (Dkt. No. 47). As fully outlined in the briefing on AT&T's Motion To Reinstate (Dkt. No. 68), Plaintiff attempted to thwart reinstatement of this motion for months on the grounds that it purportedly needed more discovery. But the discovery Plaintiff sought was either for information irrelevant to AT&T's motions or information Plaintiff already had in the public record. *See id.* AT&T was ultimately forced to move for reinstatement over Plaintiff's objection. Plaintiff cannot fairly rely on its own calculated delay in refusing to allow the Court to hear these issues as a basis for denying severance.

Indeed, having done its best to push the day of reckoning as far back as possible, Plaintiff tries to distinguish the Court's decisions in *Pergo* and *Children's Network* based solely on the fact that the motions to sever in those cases were granted earlier in the cases.[9] Plaintiff's Opp. at 10. But the purported differences here – the Plaintiff's delay in resolution of these motions, and the AT&T Defendants' cooperation with the other parties in this case and compliance with the Court's orders – are insufficient to disturb what is otherwise well-settled law on joinder.

---

[9]  Plaintiff also argues the same point in a different way, by referencing the cooperation among the parties in this case as opposed to the lack of "cooperative litigation efforts" in *Children's Network*. *See* Plaintiff's Opp. at 11. Plaintiff suggests that AT&T should be punished for cooperating in good faith with other parties in this case and following the Court's scheduling order. In any event, the motion for severance in *Children's Network* was filed approximately three months after the complaint – just as in this case; and the Court there ordered severance and transfer approximately eight months after the motion was brought – also a similar time frame as in this case. *See* Ex. 6 to Plaintiff's Opp., Dkts. Nos. and 19 and 49.

Plaintiff similarly seeks to distinguish the decisions in *Ho Keung* and *EIT Holdings* because the defendant groups here have cooperated in their positions on invalidity and claim construction. Plaintiff's Opp. at 11. Once again, this distinction amounts to a distinction on timing – preliminary invalidity contentions have fallen due in this case, and the schedule required a preliminary exchange of claim construction views. The AT&T Defendants should not be prejudiced by Plaintiff's delay or AT&T's cooperation with the other parties and observance of the Court's schedule. Moreover, the key issues of infringement, briefing and argument of claim construction, and what invalidity positions will be pursued, are individual questions for the different defendant groups. The architecture of the AT&T U-verse network is different in important respects from the architecture of the accused Verizon network – that much is borne out by Plaintiff's own differing infringement contentions as to each party.[10]

Accordingly, AT&T respectfully request that the Court grant AT&T's motion to sever.

### B. AT&T's Motion To Transfer Should Be Granted

In its opposition to AT&T's motion to transfer, Plaintiff also seeks to link issues in this case to people and companies in the New York region with attenuated or nonexistent connections to AT&T's U-verse service. Those people and companies are not relevant for purposes of this lawsuit, and will not have documents or testimony bearing on the accused U-verse service.

*None* of the relevant witnesses, documents, or systems are located in this District. Indeed, not a single factor comes down on Plaintiff's side of the scale. The balance of factors overwhelmingly supports transfer.

#### 1. The Convenience Of the Witnesses Favors Transfer

First, Plaintiff repeatedly argues that AT&T Labs., Inc., a research subsidiary of AT&T Inc. and not a party to this suit, has information to be produced in this case. But as the AT&T

---

[10] *See generally* Ex. 1 to Plaintiff's Opp., which reveals numerous differences in the systems by which the two different defendant groups are accused to infringe. Additionally, as Plaintiff acknowledges, these differences raise issues of prejudice, which is one of the fundamental bases for these decisions on misjoinder in patent cases. *See Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 418 (D. Del. 2004). The parties should not be forced into the position of coordinating like defenses when their products are not alike.

Defendants have already told Plaintiff several times, that simply is not true. The work done at AT&T Labs is forward-looking research that is neither related to the commercial aspects of the U-verse system offered to customers nor accused of infringement in this case.

Plaintiff references several documents purportedly published by AT&T Labs employees to support its argument that the work at AT&T Labs relates to U-verse. *See* Plaintiff's Opp. at 4-5. But most of these papers do not even *mention* U-verse, much less describe its operation.[11]

The other documents do not support Plaintiff's arguments, either. For example, the Sinha document purportedly describes a network monitoring tool developed at AT&T Labs that is used to monitor multiple services, including the accused U-verse service. *See* Plaintiff's Opp. at 4, and Ex. 4 thereto at 2. But this document actually supports an argument *for* transfer. The software tool (not accused of infringement and of tangential relevance at best) is "deployed in the AT&T Network Operation Center" in Irving, Texas. *Id.* To the extent these auxiliary technologies are relevant in any way to the commercial U-verse system aspects accused of infringement, they are deployed in and around central U-verse network components – not in New York. The AT&T Labs papers and personnel are red herrings, completely irrelevant to this case and identified by the Plaintiff only to try to justify leaving this case in New York.

Plaintiff also focuses on two administrative facilities in New Jersey and Connecticut, and one Video Headend Office in Connecticut (of the 64 dispersed throughout the country), as bases for witness convenience. But neither Plaintiff nor the AT&T Defendants have identified anyone working at these facilities who will provide documents or testimony in this case.

Instead, the people in and around the AT&T Defendants' headquarters, including the employees at the U-verse Network Operations Center Irving, TX, are the people with relevant information. Indeed, as discussed in AT&T's opening brief, of the approximately 1000 AT&T employees who work on the U-verse product, more than 500 are based in the Dallas suburbs of

---

[11]  Ramakrishnan does not mention U-verse, and says "[t]he information provided here is not meant to describe specific AT&T's products or services." Ex. 3 at 2. Mahimkar (and its related paper) was jointly written by AT&T Labs researchers and students at the University of Texas at Austin, and likewise does not mention U-verse. *See* Ex. 4. Ge, co-authored with faculty from Georgia Tech, similarly does not reference U-verse. *See* Ex. 5.

Irving and Richardson – all in or in close proximity to the Northern District of Texas. Decl. of AT&T's Opening Br., Mair at ¶¶ 5-6. None are based in or within 100 miles of New York. *Id*.

The early progress of this case proves as much. The witnesses the AT&T Defendants identify in their initial disclosures for technical, marketing, and financial issues surrounding U-verse (and from whom documents for this case are being collected) are all located near the primary U-verse facilities in Texas: Chet Parker (Dallas, Texas), Tom McCrady (Irving, TX), Alejandro Olea (Irving, TX), Chris Chase (Austin, TX); Peter Lowrie (Austin, TX), and Preman Narayanan (Richardson, TX). *See* Ex. 6, AT&T Defendants' Initial Disclosures, at 2.

Finally, Plaintiff identifies the inventor on the patents-in-suit, Milo Medin, and argues that his convenience favors New York. Yet Plaintiff admits that Mr. Medin actually resides in Northern California.[12] Plaintiff's Opp. at 15. Accordingly, there is no reason that New York is more convenient for Mr. Medin than Dallas.[13]

The vast majority of people touching U-verse are in and around the Northern District of Texas. The relative convenience of the witnesses, which is typically the most important consideration in a motion to transfer venue, strongly supports transfer.

### 2. The Relative Access To Documents/Proof Favors Transfer

The sources of proof and documents all strongly favor transfer, as the key custodians and documents are all centered around Dallas, Texas. No relevant evidence exists in New York, for either party. U-verse is not offered in New York, and thus no relevant custodians or documents are in New York. To the extent Plaintiff had documents in New York (and to the extent the locations of documents stored with its counsel are even relevant), defendants recently were

---

[12]   AT&T will happily offer to host Mr. Medin's deposition at AT&T's counsel's offices in Palo Alto, a short 5 miles from his office.

[13]   Plaintiff's own litigation history belies this convenience argument as Plaintiff previously brought another patent infringement lawsuit against another AT&T company – AT&T Corp. – in the Northern District of California that involved one of the same patents at issue in this case and involved the participation of Medin. *See Richard A. Williamson, On Behalf Of And As Trustee For At Home Bondholders' Liquidating Trust v. AT&T Corp.*, Civ. Action. No. 3:01-cv-05442-SI.

informed that the vast majority of Plaintiff's documents – all but five boxes, out of hundreds – have been destroyed.  *See* Ex. 2.  Accordingly, there is nothing in New York.

### 3. The Other Factors Likewise Favor Transfer

As explained fully in AT&T's opening brief, the other factors favor transfer, as well.  For example, though Plaintiff argues that New York is the most convenient venue for Plaintiff itself, Plaintiff filed a patent infringement case in the Central District of California just last year.  *See Richard A. Williamson, On Behalf Of And As Trustee For At Home Bondholders' Liquidating Trust v. Citrix Online, LLC et al.*, Civ. Action. No. 2:11-cv-02409-AHM-JEM.  Moreover, as noted above, Plaintiff previously brought another patent infringement lawsuit in the Northern District of California against AT&T Corp. involving both the '571 Patent and inventor Medin.  *See Richard A. Williamson, On Behalf Of And As Trustee For At Home Bondholders' Liquidating Trust v. AT&T Corp.*, Civ. Action. No. 3:01-cv-05442-SI.

Plaintiff also argues that the locus of operative facts is not in Dallas – where the AT&T Defendants are headquartered, and where the accused products are managed, implemented and offered to customers – but instead "close to New York" because U-verse is offered in *surrounding states* and AT&T Labs is located in New Jersey.  But the locus of operative facts in a patent infringement action must be where the alleged infringement occurred and where the related people and documents are located.  None of those is in New York.

Plaintiff further argues its choice of forum as a factor.  But "plaintiff's choice of forum should not be granted much weight" where the operative facts occurred outside of the transferor forum.  *See Zepherin v. Greyhound Lines, Inc.*, 415 F. Supp. 2d 409 (S.D.N.Y. 2006).  Plaintiff does not dispute that the alleged infringement here occurred only outside New York.

### III.   CONCLUSION

Accordingly, the AT&T Defendants respectfully request that their motion to sever the case against them be granted, and the case against them be transferred to the District Court for the Northern District of Texas, the far more appropriate venue for this dispute.

-10-
AT&T DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION TO SEVER AND TRANSFER                                    Case No. 11-CV-4948

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: May 10, 2012 | BAKER BOTTS L.L.P. |
|  | By:  /s/ Robert L. Maier |
|  | Richard B. Harper |
|  | Robert L. Maier |
|  | **BAKER BOTTS L.L.P.** |
|  | 30 Rockefeller Plaza |
|  | New York, New York 10112 |
|  | Tele:  (212) 408-2500 |
|  | Fax:   (212) 259-2538 |
|  | richard.harper@bakerbotts.com |
|  | robert.maier@bakerbotts.com |
|  |  |
|  | Bryant C. Boren, Jr., |
|  | (Admitted *pro hac vice*) |
|  | Kevin E. Cadwell |
|  | (Admitted *pro hac vice*) |
|  | **BAKER BOTTS L.L.P.** |
|  | 620 Hansen Way |
|  | Palo Alto, California 94304 |
|  | Tele:  (650) 739-7501 |
|  | Fax:(650)739-7601 |
|  | kevin.cadwell@bakerbotts.com |
|  | bryant.c.boren@bakerbotts.com |
|  |  |
|  | Kurt M. Pankratz |
|  | (Admitted *pro hac vice*) |
|  | **BAKER BOTTS L.L.P.** |
|  | 2001 Ross Avenue |
|  | Dallas, Texas 75201 |
|  | Tele:  (214) 953-6500 |
|  | Fax:   (214) 953-6503 |
|  | kurt.pankratz@bakerbotts.com |
|  |  |
|  | *Attorneys for Defendants* |
|  | *AT&T Inc., AT&T Operations, Inc. and* |
|  | *AT&T Services, Inc.* |

AT&T DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION TO SEVER AND TRANSFER                               Case No. 11-CV-4948

-12-

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May, 2012, a copy of the foregoing AT&T DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO SEVER AND TRANSFER was filed with the Clerk of the Court of the United States District Court for the Southern District of New York and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Robert L. Maier
Robert L. Maier