**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD A. WILLIAMSON, ON BEHALF OF AND AS TRUSTEE FOR AT HOME BONDHOLDERS' LIQUIDATING TRUST,<br><br>   Plaintiff,<br><br>   v.<br><br>VERIZON COMMUNICATIONS INC. et al.,<br><br>   Defendants. | No. 11 Civ. 4948 (LTS)(KNF) |

**PLAINTIFF'S RESPONSE TO THE AT&T DEFENDANTS' OBJECTION TO
MAGISTRATE JUDGE FOX'S JUNE 29, 2012 ORDER**

Plaintiff Richard A. Williamson, on Behalf of and as Trustee for At Home Bondholders'
Liquidating Trust, responds to Defendants AT&T Operations, Inc.'s and AT&T Services, Inc.'s
(together, "AT&T's" or "Defendants'") objection to Magistrate Judge Fox's June 29, 2012 Order
denying the parties' joint motion to modify the Pre-Trial Scheduling Order to extend the fact
discovery deadline from August 3, 2012 to November 6, 2012.

## I.       Introduction

Plaintiff neither opposes nor joins in Defendants' objection. However, if the Court is
inclined to extend the fact discovery period, Plaintiff respectfully submits that the extension
should apply to all parties. Defendants themselves only very recently produced the vast majority
of their documents, including large productions received just today, and likely still have more
documents to produce, thereby making it extremely difficult for us to prepare for the upcoming
depositions, the first of which is this coming Friday. Plaintiff's burden of dealing with the
Defendants' recently produced documents is every bit as great as, if not greater than, the
Defendants' claimed burden of dealing with Plaintiff's recently produced documents. In
addition, contrary to Defendants' assertions, we produced the most relevant documents in this
case long ago, with no follow-up pursued by Defendants until now.

Furthermore, Defendants' objection significantly misrepresents the fact that Plaintiff had
no role in the unauthorized destruction of At Home Corporation's documents by Iron Mountain.
As we have repeatedly explained to Defendants, the collection, storage, and unauthorized
destruction by Iron Mountain of At Home Corporation's records occurred long before Plaintiff
had possession, control, or responsibility of or for those records.

**II.     If the Court is inclined to extend the discovery period, the extension should apply to all parties.**

Although Defendants assert that they will be unable to complete discovery in the time remaining because of the quantity of materials provided to them on July 13, 2012, Defendants themselves have only recently produced the vast majority of their documents, including almost 750,000 pages of documents <u>just today</u>. Specifically, AT&T produced over a <u>million</u> pages of documents (more three quarters of its production) since only July 3, 2012, including 500,000 pages received <u>today</u>; and co-defendant Verizon produced more than <u>3.5 million</u> pages of documents (more than 91% of its production) after June 25, 2012 and another 230,000 pages of documents were received only <u>today</u>. For comparison, Plaintiff's July 13, 2012 supplemental production of Weil's electronic documents and remaining hardcopy documents was roughly 825,000 pages and 24,000 Excel files.

In addition, while Plaintiff's production is complete, Defendants likely have additional documents to produce. For example, the parties are presently discussing the production by Defendants of relevant license agreements and AT&T indicated just last week that it might still have "smaller productions" to produce.

Despite assigning numerous attorneys to review these large amounts of documents around the clock, it will be extremely difficult for us to have them reviewed in time for the upcoming depositions. In fact, AT&T did not inform us until this past Thursday that the only date on which its "technical witness" is available for his deposition is this Friday, July 20, 2012. Thus, if the Court is inclined to extend the discovery period, it is respectfully submitted that the extension should apply to all parties.

**III.   Plaintiff diligently produced its most important documents in February, April, and June 2012 and the Defendants neglected to take any follow-up discovery until only recently**

Defendants' objection includes a misleadingly one-sided account of fact discovery, and omits numerous key facts about the parties' productions and communications. Plaintiff's most important documents were produced long ago so that the Defendants could have begun taking follow-up discovery, both of the Plaintiff and of third parties, several months ago. Instead, the Defendants, hoping that the Court would extend the fact discovery deadline, waited until the past two weeks to serve no less than 40 subpoenas, cramming all of the depositions into the final two weeks of the discovery period. Any prejudice claimed by the Defendants is of their own making and Defendants should not be rewarded with a one-side extension of fact discovery as a result.

On February 1, 2012, more than five months ago, we produced a large number of documents that included, among other things, a document entitled, "Transforming the Net with Broadband Cable Data" (the "Smart Valley Talk"), dated February 6, 1996, prepared by the inventor of the patents-in-suit, Milo Medin. According to Defendants' preliminary invalidity contentions, this document forms the primary basis for Defendants' invalidity counterclaim. In addition, on April 17, 2012, we produced nearly 25,000 pages of At Home Corporation's materials collected from the electronic data saved by At Home Corporation during its wind-down and bankruptcy and, on June 8, 2012, we produced more than 1,000 files, in original electronic ("native file") format, containing At Home Corporations' financial information from 1996 to 2002.

Defendants have therefore had many months to seek documents and deposition testimony from Mr. Medin and other third parties, and from the Plaintiff, but instead waited until only July 5 to begin serving Mr. Medin and other third parties with subpoenas. Indeed, counsel for Verizon contacted us back in May to request Mr. Medin's contact information but, for reasons unknown,

3

the Defendants waited until now to seek his deposition. In addition, Defendants have known of

the unauthorized destruction of At Home Corporation's documents in 2007 for more than three

months, but waited until only now to seek discovery from Iron Mountain and other third parties

on that topic.

IV.   **Plaintiff produced Weil's documents in a timely manner and provided vast amounts of information to the Defendants regarding the collection and unauthorized destruction of At Home Corporation's documents**

Defendants' objection misrepresents Plaintiff's actions with respect to the production of

At Home Corporation's materials in the possession of Weil Gotshal.[1]  In reality, once it was

learned that Weil was in possession of copies of those materials, Plaintiff diligently searched for

and produced them. In fact, Plaintiff completed its production of all of its documents, including

the documents in Weil's possession, at the same time (and perhaps earlier) than the completion

of document production by the Defendants. The Defendants are now using this issue as a red

herring to mask their own discovery failures.

Upon learning of Weil's retention of copies of At Home Corporation's materials, we

immediately began the process of working with Weil to determine what types of materials Weil

had retained and the extent to which those materials were potentially responsive to Defendants'

requests. We provided Defendants with ongoing updates regarding the processing of Weil's

materials. We also produced to Defendants on April 17 and 19, 2012 all of the non-privileged

documents concerning Iron Mountain's unauthorized destruction of At Home Corporation's

---

[1] To be clear, Weil was never a repository of At Home Corporation's records, but rather had obtained copies of certain At Home Corporation materials in connection with earlier litigations, principally fiduciary duty and patent cases against AT&T Corporation (which were settled in 2005) and a fiduciary duty case against Cox Communications Inc. and Comcast Corporation (which was settled in 2007).

files, although Plaintiff was in no way involved with those documents or their retention at the time of their collection and unauthorized destruction.

In addition, we promptly answered all of Defendants' questions about the circumstances of the document destruction and Weil's collection of At Home Corporation's documents. For example, we repeatedly explained to Defendants that the unauthorized destruction of At Home Corporation's files predated any ownership, control, or responsibility over those files by Plaintiff, and on April 17 and 19, 2012 we produced all communications between the entity that controlled those files, the At Home Liquidating Trust, and the storage vendor Iron Mountain, who was contracted to store and maintain those files. In addition, on April 19, 2012, we responded to Defendants' April 17, 2012 request for information and at no point between then and only recently did the Defendants seek discovery from Weil, Iron Mountain, or any other third party concerning At Home Corporation's documents. In fact, it was we who facilitated a conference call on June 22, 2012 between Defendants' counsel and Richard Slack at Weil, who has been the main source of information from Weil about its collection and retention of At Home-related materials. The call with Mr. Slack was our idea and was offered as a courtesy since the Defendants had gone months without pursuing any direct discussion with or discovery from Weil.

With regard to the At Home Corporation electronic documents retained by Weil, as the Defendants are aware, those documents were only recently discovered by Weil and were saved by Weil in an archaic file format that required significant time to process. We initially provided Magistrate Judge Fox with a conservative estimate of the amount of time we expected would be needed to complete the production. Ultimately, however, we learned that the size of this electronic document collection was much smaller than was originally estimated, totaling less

5

than 30 gigabytes (GB)[2]. Contrary to Defendants' mischaracterization, our production of these electronic documents totals only about 750,000 pages and roughly 24,000 Excel files.

Defendants have also been constantly updated as to our plans for the production of these documents, but failed to object to those plans until we provided our complete production. On July 2, 2012, we provided an update to Defendants about the status of the processing of Weil's electronic files, and stated that we expected to provide our complete production in the time requested by Defendants. We also proposed that, because we had reason to believe that the electronic files consisted of only emails, Defendants select the custodians whose emails they wished to have searched and propose search terms to be used during the search. On July 5, we reiterated that "we will process the recently discovered hard drive images … for privilege and have the files for all of [the] custodians produced … as soon as possible." On July 6, we reiterated again that our production was on schedule to "process the files for privilege and prepare the files for production to [Defendants] as soon as possible." Then, on July 9, in yet another status update, we explained that, as we had originally believed, the electronic files contained solely emails and email attachments, but that "[w]e are still on track to produce to you all of the non-privileged electronic files from those hard drive images … this week."

We therefore repeatedly explained to Defendants that we would produce documents for all of the custodians as Defendants requested, subject only to a search for privileged documents. Not only did Defendants fail at any time to object to that plan, but Defendants failed to suggest any search terms for any particular custodians as originally proposed by us once notified that the

---

[2] We believe that this may be because of the relatively smaller amount of data sent via email and stored on computers more than a decade ago in the late 1990's and early 2000's, when these files were originally created and saved, versus today.

t

collected documents were all email files. In any event, the files produced are in a searchable format so that the Defendants can easily search them using custodian names and search terms.

Accordingly, Defendants should not be awarded with a one-sided extension of discovery since they failed to raise any objection to our plans for production despite our nearly constant communications with them about the status of our production, especially in light of the fact that AT&T and Verizon have only recently produced the vast majority of their documents themselves.

## V.      Conclusion

For the foregoing reasons, it is respectfully submitted that, in the event the Court is inclined to extend the fact discovery period, any such extension should apply to all parties.

Dated: July 16, 2012

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

 /s/ Joshua L. Raskin
Joshua L. Raskin
Paul Hyun
Eric Bitzegaio
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Joshua@blbglaw.com
Eric@blbglaw.com
Phone: (212) 554-1400
Fax: (212) 554-1444

BEIRNE, MAYNARD & PARSONS, LLP

William C. Norvell, Jr. (admitted *pro hac vice*)
Scott D. Marrs (admitted *pro hac vice*)
1300 Post Oak Blvd., Suite 2500
Houston, Texas  77056-3000
Phone: (713) 623-0887
Fax:  (713) 960-1527

*Attorneys for Richard A. Williamson, on behalf of and as Trustee for At Home Bondholders' Liquidating Trust*

f