UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD A. WILLIAMSON, ON BEHALF OF AND AS TRUSTEE FOR AT HOME BONDHOLDERS' LIQUIDATING TRUST<br><br>Plaintiffs,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC., VERIZON SERVICES CORP., VERIZON CORPORATE RESOURCES GROUP LLC, VERIZON DATA SERVICES LLC, VERIZON NEW YORK INC., AT&T INC., AT&T OPERATIONS, INC., AT&T SERVICES, INC.,<br><br>Defendants. | CIVIL ACTION<br><br>ECF CASE<br><br>Civil Action No. 1:11-cv-04948 (LTS)(HBP)<br><br>**AT&T DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO STRIKE THE DECLARATION AND PRECLUDE TESTIMONY OF PLAINTIFF'S <u>PROFFERED EXPERT, DR. COOPER</u>** |

NY02:748686.2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Defendants AT&T Operations, Inc. and AT&T Services, Inc. (collectively, "the AT&T Defendants") respectfully submit this memorandum in support of their motion to strike the declaration and preclude testimony of Plaintiff's proffered expert, Dr. William Cooper.

## I.   INTRODUCTION

Plaintiff relies extensively on a declaration and testimony of William Cooper, PhD, in support of its claim construction positions.  (*See* Dkt. 105).  Dr. Cooper's testimony and declaration should be excluded because he is not an expert and his testimony is, by his own admissions, unreliable.  The patents-in-suit[1] describe the "Technical Field" of the invention as "a scalable, hierarchical, distributed network architecture and processes for replicating, caching, and multicasting."  (Exh. 1,[2] '571 Patent at 1:10-13).  Dr. Cooper has no technical degrees and no true technical experience with respect to the architecture of computer networks.  Because of this, he lacks an understanding of basic networking principles that even an undergraduate engineering student would have.  Nothing in Dr. Cooper's work or educational background has provided him the requisite experience to opine on the technology of the claimed inventions.  In addition, Dr. Cooper's testimony on claim construction is unreliable and unhelpful.  He has admittedly proposed constructions that violate basic principles of claim construction.

As such, neither his declaration nor his testimony will provide any assistance to the Court in connection with claim construction.  Accordingly, Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993),

---

[1] There are four patents-in-suit.  They are U.S. Patent Nos. 6,370,571 ("the '571 Patent"), 7,225,275 ("the '275 Patent"), 7,529,856 ("the '856 Patent"), and 7,873,749 ("the '479 Patent") (collectively, the "patents-in-suit").

[2] Citations to Exh. __ refer to the Exhibits attached to the Declaration of Rober L. Maier submitted in support of this motion.

require that the Court exercise its gatekeeper function to exclude Dr. Cooper's opinions as inadmissible.

## II. FACTUAL BACKGROUND

### A. Dr. Cooper's Background

Dr. Cooper's declaration opines on the meanings of certain claim terms used in the patents-in-suit. (Exh. 2, Cooper Decl.). This is so even though Dr. Cooper lacks the requisite education or experience that would qualify him as an expert in this case. Dr. Cooper has an undergraduate degree in English, a postgraduate diploma in Radio Journalism, and a doctorate in communications. (Exh. 3, Cooper CV at 3). His doctoral thesis focused on soap operas in the context of video literacy. (Exh. 4, Cooper Dep. at 59-61). He took no technical courses. (*Id*. at 52, 55). After his studies in English and journalism, at the time of the purported invention in the 1996/1997 timeframe, Dr. Cooper was working as a broadcast journalist. (Exh. 3, Cooper CV at 3). Dr. Cooper went on to have a career in broadcasting, and then on to his current occupation as a management consultant. (*Id*. at 2).

### B. Technology Concepts Germane To The Patents-in-Suit

The patents-in-suit generally concern the field of computer networking, distributed systems, and multimedia content delivery. (*See, e.g.,* Exh. 1, '571 Patent; Exh. 5, Jeffay Decl. at ¶ 26). A person of ordinary skill in the art of the patents-in-suit "would have a Master of Science degree in computer science or computer engineering, or the equivalent thereof, and 1-2 years of practical experience designing and implementing both distributed systems and network protocols generally, as well as multimedia delivery systems specifically." (Exh. 5, Jeffay Decl. at ¶ 24).

In the field of computer networking, the Open Systems Interconnection ("OSI") model is a fundamental concept. (*See id*. at ¶¶ 27-41, discussing protocol for transmission of messages between computers. *See also* Exh. 6-7, textbook excerpts). It outlines the basic distribution of

networking tasks among various layers such that each layer need not concern itself with how other layers perform their tasks. (Exh. 5, Jeffay Decl. at ¶ 27-41; Exh. 6-7, textbook excerpts). All modern computer networks can be described with reference to the basic terms of the OSI model. (*See id*.). The OSI model is such a fundamental concept that it is standard coursework for undergraduate engineering students. (*See, e.g.,* Exh. 6-7, textbook excerpts).

### III.   LEGAL STANDARD

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. The "word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Courts are tasked with ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *See id*. at 597; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-52 (1999).

According to the Federal Circuit

> Testimony proffered by a witness lacking the relevant technical expertise fails the standard of admissibility under Fed. R. Evid. 702. Indeed, where an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to allow a witness to testify on the issue who is not qualified as a technical expert in that art.

*Sundance, Inc. v. DeMonte Fabricating Ltd*., 550 F.3d 1356, 1363 (Fed. Cir. 2008) (holding that it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art)..

The party offering expert testimony has the burden of proving that testimony is admissible by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 & n.10. The decision

whether to admit expert testimony is committed to the discretion of the district court. *Sundance*, 550 F.3d at 1360.

## IV.     ARGUMENT

### A.     Cooper Is Not Qualified To Testify As An Expert Regarding The Patents-in-Suit

Based on what is described and claimed in the patents-in-suit, the field of art in this case is that of computer networking, distributed systems, and multimedia content delivery. (*See, e.g.,* Exh. 5, Jeffay Decl. at ¶ 26. *See also* Exh. 1, '571 Patent at 1:10-13, describing the technical field of the patents-in-suit as "a scalable, hierarchical, distributed network architecture and processes for replicating, caching, and multicasting."). Dr. Cooper has no relevant educational experience and no informal training or experience to qualify him as an expert in this field. Dr. Cooper has a BA in English, a postgraduate diploma in Radio Journalism, and a PhD in Communications. (Exh. 3, Cooper CV at 3). Dr. Cooper's PhD thesis focused on soap operas in the context of video literacy. (*Id. See also* Exh. 4, Cooper Dep. at 59-61). During his studies, Dr. Cooper took no technical coursework. (Exh. 4, Cooper Dep. at 52-55). Dr. Cooper even admitted during his deposition that he did not meet the definition of a person of ordinary skill in the art set forth in Section II.B above. (*Id*. at 265-266).

When pressed regarding relevant experience in computer networking near the time of the invention, Dr. Cooper pointed to his time as the administrator of a Novell network during his postgraduate studies in 1989 or 1990. (*See* Exh. 4, Cooper Dep. at 53, 56).[3] However, his administrative tasks assigning user names and setting account privileges in no way qualify him as a computer networking expert. This is not a case about setting up user accounts and

---

[3] Curiously, Dr. Cooper's time as the administrator of a Novell network does not appear on his CV, which (according to Dr. Cooper) sets forth his "professional and industry expertise." (Exh. 2, Cooper Decl.¶ 1; Exh. 3, Cooper CV).

privileges, but rather involves patents focused on a core network architecture for delivering multimedia content.

Dr. Cooper's career as a BBC journalist and manager of various projects is impressive in the field of journalism, but it has not given him technical experience and knowledge regarding computer network architecture. For example, while Dr. Cooper claims currently to be a consultant on design of computer network architectures, when pressed, he struggled to identify any actual network components, and ultimately was able only to identify servers, switches, and encoders. (Exh. 4, Cooper Dep. at 13-16). This topical understanding of networks evidences that Dr. Cooper is at most an experienced user of networks today (and thus aware of devices like servers, switches, and encoders), but is unfamiliar with the underlying core network components that are the subject matter of this case. While his studies and career have apparently brought him in frequent contact with networks, he at best qualifies as a sophisticated user, not as a computer networking expert (either today or at the time of the invention).

Because of Dr. Cooper's lack of relevant education or experience, he lacks an understanding of basic networking principles that even an undergraduate engineering student would have. As discussed above, the OSI model is a fundamental concept of computer networking and architecture, and it is standard course work for undergraduate engineering students. (*See, e.g.,* Exh. 6-7, textbook excerpts). The OSI model's general concepts are even laid out in Defendants' expert's declaration, which Dr. Cooper claimed to have reviewed in advance of his deposition. (*See* Exh. 5, Jeffay Decl. at ¶¶ 27-41). Yet beyond knowing of the model's existence, Dr. Cooper could say nothing more about it. (Exh. 4, Cooper Dep. at 42-45). Dr. Cooper could not even give a general understanding of networking layers described by the model. (*See id.* at 44). He even sheepishly admitted that a technical expert in computer

networking would "not necessarily" need a reference in order to generally describe the layers of the OSI model, but made clear that he did. (*Id*. at 50:14-51:15) The Court (and counsel for the parties) is just as capable of consulting references as Dr. Cooper. To qualify as an expert, Dr. Cooper should *be* the reference, not just someone that knows where to look things up.

Dr. Cooper's lack of understanding of the relevant art extends to even the most basic of networking components. An expert on computer network architectures should not struggle to describe the differences between switches and routers, and should know about the internal operations of a router. Yet Dr. Cooper does struggle to characterize the difference between switches and routers, and is "not familiar with the internal operations of routers." (*Id*. at 83:20-21; 84:6-7, stating "I'm struggling to characterize for you, in terms of what the difference is" between a router and a switch; and 99:25-100:1 "I'm not familiar with the internal operations of routers.")

A technical expert in this case should be able easily to describe the fundamentals of computer networking and distinguish between basic network elements. Dr. Cooper cannot. In this case, Dr. Cooper is asked to help define computer networking phrases, and yet he is not even conversant in the most basic and fundamental of computer networking principles and terms. Dr. Cooper has no formal technical training, and whatever informal exposure he has had is insufficient to qualify him as a technical expert. His testimony and declaration should therefore be excluded.

The Federal Circuit routinely affirms district court decisions excluding expert testimony where the proffered expert is not one of skill in the relevant art at the time of the invention. For example, in *Flex-Rest, LLC v. Steelcase, Inc*., 455 F.3d 1351 (Fed. Cir. 2006):

> The district court found that one skilled in the art of the invention was a keyboard designer. Accordingly, the court excluded

> testimony by Dr. Rosecrance on the issues of anticipation and obviousness, finding that his area of expertise was in ergonomics rather than keyboard design support systems. Flex-Rest argues that the invention applies ergonomic principles to keyboard design, and that Dr. Rosecrance is qualified in the ergonomics field.
>
> The district court held a hearing to fully investigate Dr. Rosecrance's qualifications to testify about designs of keyboard systems and prior art. The court considered Dr. Rosecrance's expertise in ergonomics, but concluded that he was not one of ordinary skill in the art at the time of the invention. There is no indication that the district court abused its discretion in arriving at this conclusion.

*Id.* at 1360. *See also Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1268 (Fed. Cir. 2008) ("Although a mechanical engineer by training, [the proffered expert's] technical experience was limited to satellite design while employed as an engineer at General Electric. Accordingly, we cannot say the district court did not act within its discretion in finding [him] unqualified to testify about laboratory equipment used in the development of drug delivery devices."); *Extreme Networks, Inc. v. Enterasys Networks, Inc.*, 395 Fed. App'x 709, 715 (Fed. Cir. 2010) (unpublished table decision) (affirming exclusion of expert testimony and noting that "[g]eneral experience in a related field may not suffice when experience and skill in specific product design are necessary to resolve patent issues"). Because Dr. Cooper is not a person of ordinary skill or an expert in the relevant art, he should not be permitted to testify as an expert in this action.

### B. Even If The Court Finds Cooper To Be Qualified, His Testimony On Claim Construction Is Unreliable And Should Be Excluded

In the event that the Court determines Dr. Cooper is qualified to opine as an expert in this case, he should still be precluded from providing testimony on claim construction. Beyond Dr. Cooper's inability to understand or explain basic networking concepts, his resulting constructions are, by his own admissions, insufficient and thus unhelpful for claim construction

purposes. This is the first time that Dr. Cooper has ever attempted to construe claim terms. (Exh. 4, Cooper Dep. at 9:23-10:4). While he appears to have been informed of the fundamentals of claim construction, his resulting constructions evidence a lack of understanding of those fundamentals.

Dr. Cooper suggests that his constructions cannot themselves be used to determine infringement, but rather must be read in view of the claim language and specification for one of ordinary skill in the art to determine infringement. (*Id*. at 101:22-103:14). For example, he admits that his construction of the "first level of caching" term covers things that were not intended to be covered, but that if his constructions are read in view of the claim language and specification, one of ordinary skill in the art would understand it not to cover those things. (*See id*. at 104-109). He also admits that his construction of "multicasting" can – but is not intended to – cover "broadcasting," which he acknowledges is a different technology. (*See id.* at 212). Dr. Cooper's constructions are therefore unhelpful and violate the principles of claim construction, where definitions of terms are intended to aid in the determination of infringement and invalidity. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). If Dr. Cooper's definitions are less specific than the claim language and must be read in view of the claim language and the specification to determine infringement, then what good are they? His constructions simply add another layer of complexity and are thus unhelpful and violate basic claim construction principles. *Id.*

### V. CONCLUSION

Plaintiff "has failed to demonstrate any possible relevancy or reliability of [Dr. Cooper's] testimony as to technical matters in light of his lack of relevant technical expertise. [Dr. Cooper] lacks the necessary expertise to be of assistance to the court or the jury on the technical aspects of this case." *Sundance*, 550 F.3d at 1364. Therefore, the AT&T Defendants respectfully

request that this Court strike the declaration and preclude testimony of Plaintiff's proffered technical expert, Dr. William Cooper.

Defendants further request that the Court grant any further and other relief as the Court deems just and proper.

Respectfully submitted,

DATED: July 24, 2012                BAKER BOTTS L.L.P.


By: /s/ Robert L. Maier
Robert L. Maier
30 Rockefeller Plaza
New York, New York 10112
Tele: (212) 408-2538
Fax: (212) 259-2538
robert.maier@bakerbotts.com

Bryant C. Boren, Jr.,
(Admitted *pro hac vice*)
Kevin E. Cadwell
(Admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
620 Hansen Way
Palo Alto, California 94304
Tele: (650) 739-7501
Fax:(650)739-7601
kevin.cadwell@bakerbotts.com
bryant.c.boren@bakerbotts.com

Kurt M. Pankratz
(Admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Tele: (214) 953-6500
Fax: (214) 953-6503
kurt.pankratz@bakerbotts.com

*Attorneys for Defendants*
*AT&T Inc., AT&T Operations, Inc. and*
*AT&T Services, Inc.*