UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD A. WILLIAMSON, ON BEHALF OF AND AS TRUSTEE FOR AT HOME BONDHOLDERS' LIQUIDATING TRUST<br><br>Plaintiffs,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC., VERIZON SERVICES CORP., VERIZON CORPORATE RESOURCES GROUP LLC, VERIZON DATA SERVICES LLC, VERIZON NEW YORK INC., AT&T INC., AT&T OPERATIONS, INC., AT&T SERVICES, INC.,<br><br>Defendants. | CIVIL ACTION<br><br>ECF CASE<br><br>Civil Action No. 1:11-cv-04948 (LTS)(HBP)<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO STRIKE THE DECLARATION AND PRECLUDE TESTIMONY OF PLAINTIFF'S <u>PROFFERED EXPERT, DR. COOPER</u>** |

NY02:752142.1

Defendants AT&T Operations, Inc., and AT&T Services, Inc. ("AT&T"), and Verizon Communications Inc., Verizon Services Corp., Verizon Corporate Resources Group LLC, Verizon Data Services LLC, and Verizon New York Inc., ("Verizon"), (collectively referred to herein as "Defendants") respectfully submit this reply memorandum in support of their motion to strike the declaration and preclude testimony of Plaintiff's proffered expert, Dr. William Cooper.

## I.   INTRODUCTION

Plaintiff's opposition brief is long on Dr. Cooper's positions and use of technology, but short on true substance. When it comes to the substance, Plaintiff argues that Dr. Cooper's lack of knowledge is not important, and that regardless, it should just go to the weight of his testimony. Controlling Federal Circuit law says otherwise.

Plaintiff devotes many pages of his opposition brief and an entire new Cooper Declaration to listing out Dr. Cooper's work history in an attempt to prove that Dr. Cooper is qualified as an expert in the relevant field. This is a diversion, however, because a closer look at Dr. Cooper's experience reveals that it does not extend to the relevant technology, which is the actual architecture and components of computer networks. Plaintiff focuses on Dr. Cooper's use of and high level exposure to networks and the fact that he has worked with people and at companies that likely had networking experts, but Plaintiff provides no concrete evidence that Dr. Cooper *personally* knows anything about the underlying architecture of the networks that he was using, much less that he is an expert on the underlying network architectures and components. The evidence shows just the opposite—that he does not know and is not a suitable expert.

At the end of his opposition, Plaintiff tries to gloss over Dr. Cooper's lack of knowledge about even the most basic of network components, claiming that these components are not relevant because they are not terms requiring construction. This misses the point. Without this

baseline knowledge of networking architecture, which any networking expert would have, Dr. Cooper cannot provide meaningful and reliable testimony on the more complex networking concepts addressed in the patents-in-suit. As just one example, because of Dr. Cooper's admitted lack of knowledge about routers, he proposes a construction for caching that covers routers (although not by Dr. Cooper's intention). Plaintiff's attempts to rehabilitate Dr. Cooper on this point highlight the problem: Dr. Cooper is not even aware that routers have storage, and so he is not aware of the fundamental problems with his proposed construction.

This is not a case about how to use a network or how to manage a company that provides multimedia services. It is a case about the underlying architecture and components of a hierarchical network that uses multicast protocols, and the terms that require construction relate directly to that network architecture and its operation. Plaintiff's opposition establishes that Dr. Cooper has had an illustrious career as a journalist and a manager of new media projects and companies. However, Plaintiff has not cited any evidence to show that Dr. Cooper himself has personal knowledge, let alone expertise, about underlying network architectures and components. The fact that Dr. Cooper is not a suitable expert for this case becomes clear when he is asked to focus on specific, relevant networking concepts, where he suffers from a lack of understanding or, worse, a misunderstanding of those concepts. The Court should exclude Dr. Cooper's opinions.

## II.    ARGUMENT

### A.    Plaintiff Ignores Federal Circuit Case Law
### Regarding Admissibility Of Expert Testimony

Plaintiff cites case law from the Second Circuit in support of the proposition that, at a general level, this Court should apply a "liberal" approach in connection with the admission of

expert testimony.[1]  *See* Dkt. 119 at 10-11.  But Plaintiff ignores case law from the Federal Circuit applying Supreme Court precedent and Federal Rule of Evidence 702 in the more specific context of determining whether the admission or exclusion of expert testimony is appropriate in a patent case.  The Federal Circuit has counseled that:

> Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, and Rule 702, courts are charged with a "gatekeeping role," the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant.  Patent cases, like all other cases, are governed by Rule 702.

*Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008) (internal citations omitted).  The Federal Circuit went on to hold that:

> Testimony proffered by a witness lacking the relevant technical expertise fails the standard of admissibility under Fed. R. Evid. 702.  Indeed, where an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to allow a witness to testify on the issue who is not qualified as a technical expert in that art.

*Id*. at 1363.  *See also id*. at 1361 n.3 (noting that "[p]atent claims are construed from the perspective of one of ordinary skill in the art.").  *See also Degelman Indus. Ltd. v. Pro-Tech Welding and Fabrication, Inc.*, No. 06-cv-6346, 2011 WL 6754051, at *3 (W.D.N.Y. May 27, 2011) ("In patent infringement cases, an expert may not testify on validity or other technical questions if the expert does not possess the underlying technical experience . . . .") (citing *Sundance*, 550 F.3d at 1363-64).  Plaintiff cannot credibly argue that this precedent, and its reasoning, is not controlling here in analyzing proffered patent experts.

---

[1] Plaintiff ignores that the Second Circuit has not addressed the admissibility of expert testimony in connection with a patent case.  This is so because the Court of Appeals for the Federal Circuit, *not* the Second Circuit, has exclusive jurisdiction over appeals in patent cases.  *See* 28 U.S.C. § 1295(a)(1).  Perhaps most importantly, Plaintiff also fails to establish that the analysis in the Second Circuit and the Federal Circuit would be different, let alone that the two would somehow reach opposite results.

**B.      Dr. Cooper's Testimony Is Inadmissible Under Fed. R. Evid. 702**

Plaintiff's opposition includes a supplemental declaration of Dr. Cooper, which Plaintiff relies upon in an effort to show that Dr. Cooper's past experience somehow qualifies him as an expert in connection with the patents-in-suit.[2]  *See* Dkts. 119, 120-1.  Plaintiff further erroneously argues that Defendants' objections to Dr. Cooper only go to the weight that should be afforded to his testimony.

1.      Dr. Cooper Is Not Qualified As An Expert In The Relevant Field Of Art

Both Plaintiff's opposition and Dr. Cooper's supplemental declaration are misleading with regard to Dr. Cooper's work experience.  Reading beyond the impressive list of companies for which Dr. Cooper has worked and focusing on the actual, concrete technical experience that he has had is instructive.  Beyond his management positions, Dr. Cooper's only true technical experience appears to be his self-taught computer programming skills (Dkt. 120-1 ¶ 14), use of workstations (*id*. ¶ 15), setting passwords and permissions for a local area network (*id*. ¶ 17; Exh. 4, Cooper Dep. at 53, 56), and his work on how to format media files (e.g., through compression and encoding) (Dkt. 120-1 ¶¶ 18-19).  Even this last area involving the formatting of media files, which sounds the most technical, actually involved the purchase by Dr. Cooper's employer of a software product that would convert television video to video files (e.g., mpeg) so that they could be delivered on the internet.  *See id.*  How this impacts designing and implementing a computer network system is anyone's guess, least of all because Plaintiff fails to explain its relevance.  Job after job that Dr. Cooper describes follows this same pattern: discuss positions that involve technology and use words like "multimedia" and "convergence" of media

---

[2] Notably, the only "evidence" relied upon by Plaintiff to attempt to meet his burden to show that Dr. Cooper qualifies as an expert are statements of Dr. Cooper himself (in his declarations and deposition).  Of course, Dr. Cooper would take the self-serving position that he is qualified.

and computers to suggest that it all is somehow relevant. However, it must be remembered that Dr. Cooper's affidavit was drafted *specifically* to combat the assertion that he had no experience whatsoever in designing/implementing a network and this was all that Plaintiff could do. While the affidavit may make Dr. Cooper knowledgeable in how to operate software products and work with engineers, none of this remotely approaches qualifying him as an expert in computer networking (let alone a person of ordinary skill in the art at the time of the alleged inventions).

Paragraph 16 of Cooper's Supplemental Declaration detailing his formal education is the epitome of trying too hard. Dr. Cooper's so-called "broad perspective on the convergence of communications technologies" was a thesis arguing that people should view television shows as a "text with a visual grammar." Dkt. 120-1 ¶ 14. That is irrelevant to this case. He discusses in the following few paragraphs how he hooked his computer into a network that had access to the Internet and used it. Notably, Dr. Cooper goes on to say repeatedly that his "department" or his "unit" as a group accomplished the things he lists (although the accomplishments of those groups do not establish that he was working with any networking experts). Plaintiff is trying hard to make something out of nothing, but his efforts merely highlight Dr. Cooper's lack of any relevant education or experience during his studies.

Plaintiff has not shown that Dr. Cooper has any experience with the actual design of a computer network and its constituent components. He is, perhaps, a sophisticated computer network *user*, not a computer networking expert. This distinction renders Cooper unqualified to act as an expert in this case. *See Sundance*, 550 F.3d at 1363; *see also Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 489 n.37 (S.D.N.Y. 2002) ("If a witness is not qualified as an expert in the scientific field that governs the topics covered in his testimony, that testimony cannot possibly meet the requirements mandated by *Daubert*.").

Recent Federal Circuit case law is instructive on this issue. In *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360 (Fed. Cir. 2006), the court affirmed exclusion of expert testimony where the district court concluded that the proffered expert "was not one of ordinary skill in the art at the time of the invention." The relevant art was keyboard design. *See id.* Although the proffered expert had experience in the field of ergonomics, he was not qualified in the field of keyboard design. *See id.* The situation here is analogous—Dr. Cooper may be qualified as an expert in other fields, but not in the field of computer networking. Similar fact patterns were presented by *Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1268 (Fed. Cir. 2008) (excluding testimony of mechanical engineer where the field of art at issue was laboratory equipment used in drug delivery device development); and *Extreme Networks, Inc. v. Enterasys Networks, Inc.*, 395 Fed. App'x 709, 715 (Fed. Cir. 2010) (unpublished table decision) (affirming exclusion of expert testimony where proffered expert did not qualify as person of ordinary skill in the relevant art even though she had experience in a related field). The bottom line is that Dr. Cooper is not qualified in the relevant field of art—computer networking. Thus, his opinions relating to claim construction should be excluded in their entirety.

2. Defendants' Objections To Dr. Cooper Go Beyond The Weight That Should Be Afforded To His Opinions—Because He Is Unqualified, His Opinions Should Be Excluded In Their Entirety

Plaintiff's opposition cites authority from this Court for the proposition that "admissibility of expert testimony and reliance on such testimony for the purposes of claim construction are separate issues governed by separate rules." Dkt. 119 at 16 (quoting *Weddingchannel.com, Inc. v. The Knot, Inc.*, No. 03-cv-7369, 2005 WL 165286, at *5 (S.D.N.Y. Jan 26, 2005). Plaintiff, however, incredibly fails to disclose that admissibility is a *threshold* issue for the Court to decide before analyzing that witness' claim construction analysis. *See id.* at *4 ("the first step in determining the admissibility of [a proffered expert's] declarations is to

examine 'whether the proposed witness qualifies as an expert.'") (citation omitted).  If the Court finds that expert testimony is admissible, *then* any additional arguments relating to the expert's background and experience go to the weight of the evidence.  Here, it is Defendants' position that due to his lack of expertise in the relevant field, Dr. Cooper's opinions should be inadmissible, and excluded from consideration entirely.

**C.     Even If The Court Finds Cooper To Be Qualified, His Testimony On Claim Construction Is Unreliable And Unhelpful, And Should Therefore Be Excluded**

Contrary to Plaintiff's assertions, due to Dr. Cooper's inability to understand or explain basic networking concepts, his proffered claim constructions only add confusion—not clarity—to the meaning of the disputed claim terms.  His interpretations are therefore unhelpful for claim construction purposes.  The purpose of claim construction is to assist the trier of fact to determine the scope of the claims at issue.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (en banc).  Dr. Cooper's constructions admittedly do not do this.  *See* Dkt. 120-2, Cooper Dep. at 103:10-11 ("It's not my intention that these definitions could be meaningful in isolation.").  Because his constructions add additional complexity, they are unhelpful and violate basic claim construction principles.

As an example, Dr. Cooper's proposed constructions of the disputed "caching" terms, which go to the heart of the claimed inventions, are "providing a [ ] storage location. . . ."  His constructions, if accepted, appear to cover routers, because routers are a location that temporarily stores packets (*see* Exh. 8, Chase Dep. at 66-67), but Dr. Cooper does not even know that.  *See* Dkt. 120-1 ¶ 31 ("discussion of the difference between a switch and a router is irrelevant to interpretation of the terms in dispute"), ¶ 32 ("routers . . . simply provide points of connection").  Plaintiff's attempts to rehabilitate Dr. Cooper on this issue highlight the problem.  Plaintiff claims that Dr. Cooper did not intend to, and thus did not capture routers in his construction,

because according to Dr. Cooper, a router is "not a storage location, it's a router." Dkt. 119 at 21 (citing Cooper Dep. at 107:12).  However, Dr. Cooper himself admitted: "I'm not familiar with the internal operations of routers."  Exh. 4, Cooper Dep. at 99:25-100:1.  And the record is clear from others that are familiar with the internal operations of routers that Dr. Cooper's understanding is dead wrong.  *See* Exh. 8, Chase Dep. at 66-67 (testimony of AT&T network architect and corporate representative regarding temporary storage of packets at routers).

Moreover, Dr. Cooper's failure to substantively discuss "caching" in his supplemental declaration illustrates a gaping hole in his expertise.  According to Dr. Cooper, a "team" at the Press Association during 1997-2000 "developed various innovative approaches to online publication, hosting, replication and caching."  *See* Dkt. 120-1 ¶ 21.[3]  There is no mention of a single thing Dr. Cooper did with respect to caching or what those "innovative approaches" were to demonstrate any knowledge regarding caching.  Further, Dr. Cooper states that while he was at the BBC, various caching "techniques were used to improve the efficiency of services."  *Id*. ¶ 22.  Again, he does not say who worked with caching or what specific improvements were made. More importantly, he does not say that he had *any* personal involvement with it.  That is the entire discussion with respect to his expertise in caching technology, and in neither instance does Dr. Cooper say he had any personal involvement with it.

The concepts of caching are the heart of the inventions claimed in the patents-in-suit and are the most important issues for this Court to address during claim construction.  The parties are briefing a motion to exclude Dr. Cooper's testimony for his lack of networking expertise and his lack of knowledge regarding caching as it relates to networks.  Given that reality, it is stunning

---

[3] In this same paragraph of his declaration, Dr. Cooper refers to "the patent on which [he] is named as a co-inventor . . . ."  Tellingly, that patent, U.S. Patent No. 6,772,122, relates to generating animated characters.  Exh. 9, U.S. Patent No. 6,772,122.  This has nothing to do with the technology at issue here.

that the above-described statements in Dr. Cooper's new 19-page declaration and Plaintiff's lengthy brief are the best that Plaintiff can do. It speaks volumes and mandates exclusion of Dr. Cooper's opinions on claim construction.

### III.  CONCLUSION

For the foregoing reasons, and the reasons stated in Defendants' opening brief (Dkt. 111), Defendants respectfully request that this Court strike the declaration and preclude testimony of Plaintiff's proffered technical expert, Dr. William Cooper.[4]

---

[4] In the event that the Court is not inclined to decide based solely on the parties' briefing whether to exclude Dr. Cooper's testimony in its entirety, Defendants respectfully request that the Court schedule a *Daubert* hearing on this issue in advance of the *Markman* hearing.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED:  August 21, 2012 | BAKER BOTTS L.L.P. |
| By:  /s/ David B. Bassett<br>David B. Bassett (DB-8727)<br>WILMER CUTLER PICKERING HALE AND<br>     DORR LLP<br>399 Park Avenue<br>New York, NY 10022<br>david.bassett@wilmerhale.com<br>Phone: (212) 230-8800<br>Fax: (212) 230-8888<br><br>William F. Lee (admitted *pro hac vice*)<br>WILMER CUTLER PICKERING HALE AND<br>     DORR LLP<br>60 State Street<br>Boston, MA 02109<br>Phone: (617) 526-6556<br>Fax: (617) 526-5000<br><br>Caren K. Khoo (CK-2972)<br>Olubukola Aina (admitted *pro hac vice*)<br>VERIZON CORPORATE RESOURCES GROUP LLC<br>One Verizon Way<br>Basking Ridge, NJ 07920<br>Phone: (908) 559-5623<br>Fax: (908) 766-6974<br><br>*Attorneys for Defendants Verizon Communications Inc., Verizon Services Corp., Verizon Corporate Resources Group LLC, Verizon Data Services LLC, and Verizon New York Inc.* | By:  /s/ Robert L. Maier<br>Robert L. Maier<br>30 Rockefeller Plaza<br>New York, New York 10112<br>Tele:  (212) 408-2538<br>Fax:   (212) 259-2538<br>robert.maier@bakerbotts.com<br><br>Bryant C. Boren, Jr.,<br>(Admitted *pro hac vice*)<br>Kevin E. Cadwell<br>(Admitted *pro hac vice*)<br>**BAKER BOTTS L.L.P.**<br>620 Hansen Way<br>Palo Alto, California 94304<br>Tele:  (650) 739-7501<br>Fax:(650)739-7601<br>kevin.cadwell@bakerbotts.com<br>bryant.c.boren@bakerbotts.com<br><br>Kurt M. Pankratz<br>(Admitted *pro hac vice*)<br>**BAKER BOTTS L.L.P.**<br>2001 Ross Avenue<br>Dallas, Texas 75201<br>Tele:  (214) 953-6500<br>Fax:   (214) 953-6503<br>kurt.pankratz@bakerbotts.com<br><br>*Attorneys for Defendants<br>AT&T Inc., AT&T Operations, Inc. and<br>AT&T Services, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August 2012, a copy of the foregoing DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO STRIKE THE DECLARATION AND PRECLUDE TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT, DR. COOPER was filed with the clerk of the court of the United States District Court for the Southern District of New York and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Robert L. Maier
Robert L. Maier