UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD A. WILLIAMSON, ON BEHALF OF AND AS TRUSTEE FOR AT HOME BONDHOLDERS' LIQUIDATING TRUST<br><br>Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC., VERIZON SERVICES CORP., VERIZON CORPORATE RESOURCES GROUP LLC, VERIZON DATA SERVICES LLC, VERIZON NEW YORK INC., AT&T INC., AT&T OPERATIONS, INC., AT&T SERVICES, INC.,<br><br>Defendants. | CIVIL ACTION<br><br>ECF CASE<br><br>Civil Action No. 1:11-cv-04948 (LTS)(HBP) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
<u>MOTION FOR SPOLIATION SANCTIONS</u>**

DAL02:614713.14

**Table of Contents**

I.   PRELIMINARY STATEMENT ....................................................................................... 1

II.  LEGAL ARGUMENT ....................................................................................................... 2

   A.   Element #1:  Plaintiff Had Control Over and a Duty to Preserve Evidence ....................... 2

      1.   Plaintiff Concedes He Had Control Over the Destroyed Materials ............................... 2

      2.   Plaintiff Had a Duty to Preserve the Destroyed Materials ............................................. 2

   B.   Element #2:  Plaintiff Acted With a Culpable State of Mind ............................................. 7

   C.   Element #3:  Destroyed Materials Were Relevant and Favorable to Defendants ............... 9

III. CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Chan v. Triple 8 Palace, Inc.*,
  No. 03-6048, 2005 WL 1925579 (S.D.N.Y. Aug. 11, 2005)......................................................10

*In re NTL, Inc. Secs. Litig.*,
  244 F.R.D. 179 (S.D.N.Y. 2007) ............................................................................................2, 6

*Innis Arden Golf Club v. Pittney Bowes, Inc.*,
  257 F.R.D. 334 (D. Conn. 2009)..................................................................................................5

*Morrow v. Microsoft Corp.*,
  499 F.3d 1332 (Fed. Cir. 2007)....................................................................................................3

*Rambus, Inc. v. Infineon Tech. AG*,
  220 F.R.D. 264 (E.D. Va. 2004) ..................................................................................................5

*Spacone v. Williamson*,
  Case No. 05-156717, 2007 WL 4292601 (9th Cir. Dec. 6, 2007) ...............................................6

**STATUTES**

11 U.S.C. § 541(a) ...........................................................................................................................9

11 U.S.C. § 1141(b) .........................................................................................................................9

35 U.S.C. § 102(b) ...........................................................................................................................9

**OTHER AUTHORITIES**

Treasury Regulation § 301.7701-4(d)..............................................................................................4

I.   **PRELIMINARY STATEMENT**

Plaintiff[1] fails to address, let alone refute, key issues addressed to each of the three elements in a spoliation motion:

- Element #1:  Duty to Preserve:  Ongoing federal court litigation involving which At Home Trusts had standing and the right to grant a license (and which led to the 2009 settlement and consolidation of assets in the BHLT) triggered a duty to preserve the Iron Mountain materials.  Moreover, with respect to one of the patents-in-suit, Plaintiff did not grant AT&T Corp. a license at the conclusion of a previous infringement suit, leaving a significant likelihood of litigation involving the same patent and the materials at Iron Mountain relating to it.  Opening Mem. at 17; Opening Mem. Exh. 29.

- Element #2:  Culpable Conduct.  Plaintiff was on notice that the materials stored at Iron Mountain would be destroyed sometime after 2005.  Plaintiff negligently and recklessly failed to discover and remedy the automatic destruction terms in place with Iron Mountain.  Plaintiff and his counsel never issued a document hold memorandum or discussed document retention with the AHLT or Iron Mountain. Opening Mem. at 5, 18–19.

- Element #3:  Relevant Materials Favorable to Defendants Destroyed.  Multiple former At Home witnesses testified regarding the technical records that they maintained at the company, including public presentations relevant to Defendants' invalidity arguments, and Defendants identified specific Iron Mountain boxes with identification revealing highly relevant materials.  Opening Mem. at 9-12.

Having failed to address these facts or take any responsibility for the destruction of nearly all of At Home's records, Plaintiff concludes his Opposition by audaciously suggesting that he deserves particular credit for attempting to meet his discovery obligations in this case. Plaintiff has done nothing commendable; indeed, Plaintiff did not inform Defendants or this Court of the destroyed evidence until well into the discovery period, and Plaintiff did virtually nothing to try to recapture or recreate any of the materials after learning of the destruction, instead waiting years for issues to come to a head.[2]  Plaintiff must be held accountable for his

---

[1] Capitalized terms that are not defined in this Reply have the meanings given them in the Motion for Spoliation Sanctions (the "Opening Memorandum").

[2] Plaintiff asserts that he exerted "a tremendous amount of effort and expense" to put Weil's electronic files into a searchable format "for Defendants' ease of use." Opp. at 19, n. 21.  But neither Plaintiff nor its counsel reviewed any portion of the approximately one million pages of electronic Weil documents – which, importantly, did not include the technical and personal documents of Mr. Medin – before dumping them wholesale on Defendants.

culpable conduct and bear the harm and prejudice resulting from the destruction of crucial evidence that bears on invalidity, non-infringement, and other critical defenses in this litigation.

## II.   LEGAL ARGUMENT

### A.   Element #1:  Plaintiff Had Control Over and a Duty to Preserve Evidence

#### 1.   Plaintiff Concedes He Had Control Over the Destroyed Materials

Defendants' Opening Memorandum established Plaintiff had control over the materials stored at Iron Mountain because Plaintiff had (a) legal authority over the materials under the At Home bankruptcy plan and (b) the practical ability to access and obtain the materials at any time. Opening Mem. at 14–16 (discussing Plaintiff's legal right, authority and practical ability to obtain the materials sought upon demand) (citing *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007)).  Plaintiff fails to respond to either of Defendants' arguments that Plaintiff had the unhindered right to access and use the "jointly shared" materials.  *Id*.  Indeed, the declaration of Jacquelyn Crawford (former trustee of the AHLT) Plaintiff submitted confirms that Plaintiff had unrestricted access and the right to use the materials.  Opp. Exh. D, Decl. J. Crawford ¶7 ("[T]he document management process worked smoothly, with both the BHLT and GUCLT being given access to At Home's stored at Iron Mountain when requested and returning the documents to the Iron Mountain facility.").  Accordingly, Plaintiff had the requisite level of control over the destroyed materials for purposes of the first element of spoliation.

#### 2.   Plaintiff Had a Duty to Preserve the Destroyed Materials

There are four independent, but related, bases that each taken alone establishes Plaintiff's duty to preserve in this case.  Opening Mem. at 16–17.  Plaintiff's attempts to escape its obligations under any—let alone all—of these reasons is baseless.

<u>Plaintiff Williamson Conceded a Duty to Preserve</u>.  First, Plaintiff conceded a duty to preserve.  As set forth in Defendants' Opening Memorandum, Plaintiff conceded in his

deposition that he had a duty to preserve throughout the relevant time period:

> Q: Well, what was your expectation of the steps that Crawford would be taking with respect to the Iron Mountain document[s]?
>
> A: To make sure that no documents were destroyed, that all documents were preserved, and that not a scrap of paper was destroyed. That was my expectation.
>
> Q: And that was because litigation had been filed, correct?
>
> A: **Yes**. And because the plan . . . specifically says litigation will be filed and it tells you which trust has the right to bring which types of litigation against which categories of Defendants. It couldn't have been clearer. These are sophisticated people we are dealing with. O'Melveny & Myers knows that **when there's litigation you don't destroy anything. It's a permanent, total, complete litigation hold**.

Opening Mem. at 16; Opening Mem. Exh. 10, Williamson Dep at 203 (emphasis added). Indeed, earlier in his deposition, Plaintiff testified that one purpose of the BHLT was to "preserve [the At Home Corporation documents] because litigation was contemplated from the get-go." Exh. 32,[3] Williamson Dep. at 93. Although Plaintiff makes a conclusory denial that he ever conceded a duty to preserve, Opp. at 15, at no point does he attempt to explain away his deposition testimony.

BHLT's Primary Purpose of Litigation Created a Duty to Preserve. Second, Plaintiff had a duty to preserve the materials at Iron Mountain because the primary—and practical—purpose of his trust was to litigate claims involving those materials. Opening Mem. at 17. Indeed, the At Home Trusts were involved in litigation before the Federal Circuit over which of the trusts had standing to prosecute infringement claims during the time frame leading up to the destruction at Iron Mountain. The litigation implicated Plaintiff's rights in the AHLT and the patents-in-suit, directly leading to the 2009 settlement that consolidated assets in the BHLT.[4] These facts are

---

[3] Citations to exhibit numbers refer to the Exhibits attached to the Supplemental Declaration of Richard B. Harper.
[4] *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1343–44 (Fed. Cir. 2007) (holding that GUCLT did not have standing to prosecute infringement claims because the patents had been severed from the right to sue). Plaintiff was not a named party in the litigation with Microsoft, but the AHLT, of which Plaintiff had a majority beneficial interest, was.

undisputed and made future litigation relating to the patents-in-suit reasonably foreseeable. *Id*. at 7.

In response, Plaintiff makes three technical arguments that neither rebut Defendants' arguments nor account for what was actually happening at the time of the destruction. First, Plaintiff argues that the BHLT is a liquidating trust and not a litigation trust. Opp. at 3. Plaintiff's semantic diversion is a distinction without a difference. A liquidating trust that primarily owns claims and causes of action *is* a litigation trust. If substantially all assets of a trust are claims and causes of action—as was the case with the BHLT until 2010—it can only "liquidate" by threatening, prosecuting, and settling litigation.[5] The language of the BHLT Agreement and other Plan Documents expressly charged Plaintiff with reducing the claims and causes of action in his trust to money through litigation and settlement. Opening Mem. Exh 2, Plan Art. 7.H.3, 7.H.6; Opening Mem. Exh. 14, BHLT Agreement Preamble. Further, Plaintiff himself conceded in his deposition that each of the At Home Trusts had responsibilities and rights in respect of the contemplated litigation. Opening Mem. at 8; *supra* § II.A.1. Having had a continuing expectation of litigation, Plaintiff (and the other trustees) had a duty to preserve.

Plaintiff's next response, that he could not have expected this litigation because the BHLT did not "own" the At Home patents at the time of destruction, fails not only because he was involved in litigation over who could assert patent claims at the time, but also because he was the primary beneficial owner of the patents. Opp. at 14. As discussed above, in 2007 there was litigation relating to the At Home Trusts' ability to prosecute infringement claims. The issue of legal title to the patents is irrelevant for the purposes of whether Plaintiff could have expected future litigation because until 2007 the BHLT had the right to sue for infringement in relation to

---

[5] The term "liquidating trust" is merely a tax characterization that avoids double taxation at both the entity and beneficiary levels, Treasury Regulation § 301.7701-4(d), and makes no difference in analyzing Plaintiff's conduct.

the patents-in-suit. From confirmation of the Plan in 2002 until the materials were destroyed in 2007, only BHLT and GUCLT—neither of which, by Plaintiff's own admission, had legal title to the patents—had the right to assert claims for infringement under the Plan Documents. Opp. at 3; *see also* Opening Mem. at 3. In addition, Plaintiff's argument is belied by his own prior conduct: Plaintiff did not have legal title when he sued AT&T Corp. for infringement in 2002. Opp. at 10. Moreover, Plaintiff was the primary beneficial owner of the patents by virtue of his majority beneficial ownership in the AHLT. Opening Mem. at 3. Plaintiff did not need legal title to the patents in order to expect this litigation. *Id*.

Finally, Plaintiff's argument that at the time he did not have authority to sue Defendants misses the fundamental point that he need only anticipate litigation involving the patent (and not a specific party). Opp. at 14 ("At the time Iron Mountain destroyed the records, Plaintiff was not involved in any litigation with Defendants and did not have the right to bring any litigation against them!") (emphasis in original). Defendants need only show that Plaintiff had a reasonable expectation of the *subject matter and nature of the litigation* at issue in this case; the law does not require Plaintiff to have anticipated the precise defendants he subsequently named.[6] Even if Plaintiff did not have the right to sue certain of the Defendants in this case in 2007, he was at that time a litigation trustee with the right to assert claims for infringement in relation to the patents now in suit.[7] Indeed, Plaintiff conceded that "the plan . . . specifically says litigation will be filed." *See* Exh. 10, Williamson Dep at 203. This is more than enough to establish a duty

---

[6]*See, e.g., Rambus, Inc. v. Infineon Tech. AG*, 220 F.R.D. 264, 287 n.30 (E.D. Va. 2004) ("No case, however, expressly states that the would-be spoliator must anticipate litigation with the specific party who later brings the suit;"); *Innis Arden Golf Club v. Pittney Bowes, Inc.*, 257 F.R.D. 334, 340 (D. Conn. 2009) (sanctioning spoliation that occurred prior to the identification of the defendants).

[7]Under the Plan, BHLT was given the right to sue the "Controlling Shareholders," including for infringement of the patents-in-suit. Opening Mem. at Exh. 2, Plan §§ 4.E, 7.C. The Plan defines "Controlling Shareholders" by incorporating the definition given to such term in the Committee Settlement Agreement. Opening Mem. at Exh. 2, § Plan I.A.45. The Committee Settlement Agreement defines "Controlling Shareholders" to include their "successors." Opening Mem. at Exh. 1, Committee Settlement Agreement ¶ 8(iii). The AT&T Defendants are successors by merger of AT&T Corp. and SBC Communications, Inc.

to preserve under the law and the facts of this case.

<u>Licensing Issue Created Likelihood of Future Litigation for Plaintiff</u>.  Defendants also established a duty to preserve in their Opening Memorandum because at the conclusion of the 2005 AT&T settlement, Plaintiff did not grant AT&T Corp. a license.  Opening Mem. at 17.  One of the At Home Trustees stated in 2005 that this exposed AT&T "to the risk of future infringement claims for post-settlement use of At Home intellectual property by . . . the BHLT . . ." *Id*. at 17; Opening Mem. Exh. 29, Statement of GUCLT.  In his Opposition, Plaintiff offers no response to this fact, thereby conceding that future litigation was expected upon the failure to grant a license.  Moreover, and in addition to the ongoing litigation before the Federal Circuit, Plaintiff was a party to appellate litigation in the Northern District of California and the Ninth Circuit over the creditor trusts' ability to grant a license to the patents-in-suit.[8]  Like the Microsoft case before the Federal Circuit, the result of this litigation also led to the consolidation of assets in the BHLT, thus making future litigation relating to the patents-in-suit foreseeable to the Plaintiff.  *Id*. at 7.

<u>Crawford's Acts Should Be Imputed to Plaintiff Because Plaintiff was the Beneficial Owner of the AHLT and Acquired Rights in the Patents</u>.[9]  Finally, Defendants established in the Opening Memorandum that the AHLT's duty to preserve, which Plaintiff has conceded, should be imputed to Plaintiff because he was the primary beneficiary of the AHLT, and he subsequently acquired all rights to the AHLT's assets, including the At Home patents.  Opening Mem. at 3, 7; Opening Mem. Exh. 2, Plan § 7.C.3–4; Opening Mem. Exh. 17, AHLT Agreement

---

[8] *See Spacone v. Williamson*, Case No. 05-156717, 2007 WL 4292601 (9th Cir. Dec. 6, 2007) (affirming the District Court); *Williamson v. Morrow*, Memorandum and Order dated Aug 3, 2005 [Dkt. No. 12], United States District Court for the Northern District of California (holding that under the Plan Documents only AHLT could grant a license).

[9] *Compare In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 198-201 (S.D.N.Y. 2007) (holding that adverse inference and monetary sanctions were warranted after finding that defendant's failure to take additional steps after the bankruptcy of its predecessor to ensure that the non-party entity with which it emerged from the predecessor's bankruptcy continued the litigation hold of relevant documents was grossly negligent).

§ 2.1. Having been the primary beneficiary of the AHLT, and now owning its assets directly, Plaintiff should not be allowed to profit from Crawford's negligence. Plaintiff acquired all the AHLT's rights in the patents and should be held accountable for Crawford's actions if he wishes to assert causes of action today. In response to Defendants' argument, Plaintiff offers a simplistic definition of ownership based solely on legal title. The duty to preserve, however, is about control, not legal title. Opp. at 9; *see also* Opening Mem. at 14–16; *supra* § II.A.1. For all these reasons, Defendants have established that Plaintiff had a duty to preserve the destroyed materials.

B.  **Element #2:  Plaintiff Acted With a Culpable State of Mind**

Plaintiff's failure to preserve materials was negligent, at a minimum, or reckless for two reasons. First, Plaintiff failed to investigate the circumstances under which the materials were being preserved or to prevent their destruction, communicate with Iron Mountain or the AHLT about the need for preservation or place a litigation hold on any of the materials stored at Iron Mountain, or promptly take any steps to reconstruct the lost evidence after it was destroyed. Opening Mem. at 18-20. Second, even putting Plaintiff's actions aside, Crawford's culpable conduct can be imputed to Plaintiff. Opening Mem. at 3, 7. None of Plaintiff's responses excuse these failures to act.

Plaintiff attempts to shift the focus away from his inactions to those of Iron Mountain. In doing so, Plaintiff incorrectly claims he did not have a culpable state of mind because he "learned about Iron Mountain's inadvertent destruction ***after the fact***." Opp. at 16 (emphasis in original). Plaintiff misses the point. The very fact that Plaintiff allegedly learned about the destruction after the materials were destroyed only bolsters the evidence of Plaintiff's negligence in failing to act <u>before</u> the destruction. Plaintiff was on actual, express notice under the terms of the Committee Settlement Agreement and the Document Storage Agreement that the materials

would be destroyed sometime after 2005, yet by his own admissions, Plaintiff did no diligence whatsoever on the terms and conditions of the document storage arrangement. Opening Mem. at 3, 5.

Plaintiff's second argument misstates the record by asserting that he instructed Iron Mountain "not to destroy" the materials. Opp. at 17; *see also* Opp. at 5, n.5. Indeed, At Home entered into a contract specifically providing for the automatic destruction of the materials after a set period of time. Opening Mem. at 3-4. Iron Mountain's representative repeatedly testified to that fact. *See, e.g., id.* Exh. 7, Iron Mountain 30(b)(6) Dep. at 35-36 (testifying that Iron Mountain set up "an automatic destruction account with Excite@Home, and that automatic destruction means that they prepaid in advance for their records to be stored for a certain amount [sic] period of time, and after that period of time, the records would be destroyed."); Exh. 33, Iron Mountain 30(b)(6) Dep. at 60 (testifying that At Home had selected the "auto-destruction option"); Exh. 7. at 109-110 (testifying that "it was a prepaid destruction account").[10] Plaintiff tries to posit that a cover letter from At Home requesting advance notice of destruction somehow became part of the Document Storage Agreement with Iron Mountain. Opp. at 6. Not only was that request not part of the contract,[11] it does not change the fundamental point that Plaintiff created the risk of destruction by having a document destruction order in place. Plaintiff's culpable conduct was exacerbated from year to year as litigation was filed and continued and Plaintiff did not change the document storage arrangement with Iron Mountain.

Finally, Defendants also argued in the Opening Brief that Crawford's actions should be imputed to Plaintiff. Opening Mem. at 19. For all the reasons discussed in the Opening Brief and this Reply, Crawford's conduct should be imputed to Plaintiff by virtue of his majority

---

[10]*See also* Exh. 34, Falcone Dep. at 47-48 (testifying that At Home prepaid for "initial transfer, receiving and entry, storage for a period of three years, and destruction").
[11]*See* Opening Mem. at 4; Exh. 8, Falcone Dep. at 45–46; Opening Mem. Exh. 7, Iron Mountain 30(b)(6) at 62-66, 195.

beneficial ownership in the AHLT and the fact that he is the sole successor-in-interest to At Home.[12]

C.    **Element #3:  Destroyed Materials Were Relevant and Favorable to Defendants**

As to the final element, Defendants' Opening Memorandum established through testimony from multiple witnesses, as well as inventory records surviving the destruction at Iron Mountain, that the destroyed materials directly related to issues being litigated in this case: public disclosures regarding the alleged invention; the At Home network; the At Home business; intellectual property; valuation; and Mr. Medin.[13]  Plaintiff's only response is that Defendants have failed to meet their burden "to prove" that the missing materials were not only relevant, but favorable.  Opp. at 18.  Plaintiff's argument fails for two reasons.  First, Plaintiff is wrong in applying the legal standard, as the facts put forward by Defendants satisfy any burden for

---

[12] In tacit recognition that the representatives of the bankruptcy estate and other At Home Trusts were negligent, Plaintiff wrongly insists that the BHLT is not the only remaining successor of At Home and its successor trusts. Opp. at 7-8.  As a matter of federal bankruptcy law, the successor to the At Home Corporation debtors were their respective chapter 11 bankruptcy estates.  11 U.S.C. § 541(a).  Upon confirmation of the Plan, all assets of the estates vested in the At Home Trusts and the At Home Trustees—including the Plaintiff—became the successors of the estates.  11 U.S.C. § 1141(b); Exh. 2, Plan 7.C; 7.H.3; Exh. 14, BHLT Agreement at 1.  The Plan expressly provides at Article 7.H.3 that "[e]ach Liquidating Trustee shall be deemed the Estate's representative. . ."  The BHLT Agreement, which incorporates the Plan by reference, also states in its preamble that it "provides for the establishment [of a trust] . . to resolve, liquidate and realize upon the Controlling Shareholders Related Litigation and such other claims and property transferred or held by the Bondholders' Liquidating Trust (collectively the "Trust Assets"), *as successor to and representative of the Estates and the Debtors*." (emphasis added); *see also* BHLT Agreement § 9.8.  Because At Home Corporation, the GUCLT, and AHLT transferred substantially all their assets to the BHLT in 2009 and each no longer exists, the BHLT is their sole remaining successor.  Opening Mem. at 7.

[13] Defendants established through Mr. Medin's testimony that he and others at At Home made multiple presentations in 1995 and 1996 to cable operators, vendors, and members of the media regarding his alleged invention and that in 1996 he distributed a Request for Proposal to manufacturers and vendors that disclosed his alleged invention. Opening Mem. at 21 (citing Exh. 23, Medin Dep. at 114–17; Exh. 30, Revised Decl. of Milo S. Medin (dated Aug. 1, 2001), ¶¶ 3–7)).  The materials evidencing public disclosures of the alleged invention and/or offers for sale of the At Home network would have been relevant and favorable to Defendants.  *See* 35 U.S.C. § 102(b).  Defendants established through the testimony of Ms. Wilson that At Home stored "hundreds"—if not a "thousand"—of Mr. Medin's tapes, as well as Mr. Medin's papers and other records, at Iron Mountain.  *Id*. at 10; Exh. 13, Wilson Dep. at 30; 153-155.  Defendants also established through the testimony of Mr. Van Camp and Mr. McKernan that At Home's engineer group created diagrams, schematics, and materials relating to network equipment and that Mr. McKernan's laptop included technical documents and slide show presentations given by Mr. Medin to the public. *Id*. at 11 Exh. 26, Van Camp Dep. at 40–41 and Exh. 24, McKernan Dep. at 95).  Defendants even established that Plaintiff's own inventory lists of the materials stored at Iron Mountain show that the materials contained "valuation" and "presentation" materials.  Opening Mem. at 12, 22.  None of these materials have been produced to Defendants in this litigation.

demonstrating the missing materials were favorable.  Second, Defendants demonstrated all of the ways that the destroyed materials would work in their favor.  *See* Opening Mem. at 9-12, 20-22.

Plaintiff fails to provide the correct legal standard.  Plaintiff's one sentence statement of the law is that Defendants have to "prove" the missing materials were favorable—and Plaintiff stops there.  Opp. at 18.  However, in showing the missing materials are favorable, Defendants are not held to an "onerous" burden, "lest the spoliator be permitted to profit from its destruction."  *See* Opening Mem. at 20 (citing *Chan v. Triple 8 Palace, Inc.*, No. 03-6048, 2005 WL 1925579, at *7 (S.D.N.Y. Aug. 11, 2005)).

Although Defendants demonstrated all the ways the destroyed materials would work in their favor, Plaintiff only attempts to explain away Mr. Medin's testimony, stating that Mr. Medin produced his records that he "took . . . after the company went bankrupt."  Opp. at 18.  By Plaintiff's own description, however, Mr. Medin only produced those materials that he *chose* to take with him upon his departure.  *Id*.  Plaintiff does not account for any of the numerous materials Mr. Medin left with the company when he departed, including his emails or the "hundreds" of his tapes that Ms. Wilson described—all of which were stored at Iron Mountain under the Plaintiff's control and never produced in this litigation.  This is especially important given Mr. Medin's testimony that At Home was "not very much of a paper driven company" and that the best bet for finding certain materials and information was "looking at email threads."  *See* Exhs. 23, 35, Medin Dep. at 65, 78, 82, 94, 135.  Moreover, Plaintiff fails to address any of the multiple other witness testimony and materials referenced by Defendants that show materials critical to key issues in this case were destroyed, causing severe disadvantage to Defendants.

### III.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for sanctions against Plaintiff.

DATED:  December 14, 2012			Respectfully submitted,

By: /s/ Richard B. Harper			By:  */s/ David B. Bassett*
    Richard B. Harper			    David B. Bassett (DB-8727)
    Robert L. Maier			    **Wilmer Cutler Pickering Hale and Dorr LLP**
    **BAKER BOTTS L.L.P.**			    399 Park Avenue
    30 Rockefeller Plaza			    New York, NY 10022
    New York, New York 10112		    david.bassett@wilmerhale.com
    Tele:  (212) 408-2500			    Phone: (212) 230-8800
    Fax:   (212) 259-2538			    Fax: (212) 230-8888
    richard.harper@bakerbotts.com
    robert.maier@bakerbotts.com		    William F. Lee (admitted pro hac vice)
					    **Wilmer Cutler Pickering Hale and Dorr LLP**
    Bryant C. Boren, Jr.,			    60 State Street
    (Admitted *pro hac vice*)			    Boston, MA 02109
    Kevin E. Cadwell			    Phone: (617) 526-6556
    (Admitted *pro hac vice*)			    Fax: (617) 526-5000
    **BAKER BOTTS L.L.P.**
    1001 Page Mill Rd., Bldg. One		    Caren K. Khoo (CK-2972)
    Palo Alto, California 94304		    Olubukola Aina (admitted pro hac vice)
    Tele:  (650) 739-7501			    **Verizon Corporate Resources Group LLC**
    Fax:(650)739-7601			    One Verizon Way
    kevin.cadwell@bakerbotts.com		    Basking Ridge, NJ 07920
    bryant.c.boren@bakerbotts.com		    Phone: (908) 559-5623
					    Fax: (908) 766-6974
    Kurt M. Pankratz
    (Admitted *pro hac vice*)			    *Attorneys for Defendants Verizon*
    **BAKER BOTTS L.L.P.**			    *Communications Inc., Verizon Services Corp.,*
    2001 Ross Avenue			    *Verizon Corporate Resources Group LLC,*
    Dallas, Texas 75201			    *Verizon Data Services LLC, and Verizon New*
    Tele:  (214) 953-6500			    *York Inc.*
    Fax:   (214) 953-6503
    kurt.pankratz@bakerbotts.com

    *Attorneys for Defendants*
    *AT&T Inc., AT&T Operations, Inc.*
    *and AT&T Services, Inc.*