UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

RICHARD A. WILLIAMSON, on behalf of
and as trustee for At Home Bondholders'
Liquidating Trust,

        Plaintiff,

-v-                                             No. 11 Civ. 4948 (LTS)(HBP)

VERIZON COMMUNICATIONS INC., et al.,

        Defendants.

-------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JAN 2 2 2013

## MEMORANDUM ORDER

Plaintiff Richard A. Williamson ("Plaintiff" or "Williamson") brings this patent infringement action against Verizon Communications, Inc., Verizon Services Corp., Verizon Corporate Resources Group LLC, Verizon Data Services LLC, Verizon New York Inc. (collectively, the "Verizon Defendants"), AT&T Inc., AT&T Operations, Inc., and AT&T Services, Inc. (collectively, the AT&T Defendants) (all together, "Defendants"). Before the Court is AT&T Inc.'s motion to dismiss Plaintiff's claims against it for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). The Court has reviewed carefully all of the parties' submissions and, for the following reasons, AT&T Inc.'s motion to dismiss is granted.[1]

---

[1] On August 31, 2012, Plaintiff filed a Supplemental Memorandum of Law in Opposition to AT&T Inc.'s motion to dismiss, and on September 14, 2012, AT&T filed a response to that Supplemental Memorandum. Plaintiff did not request permission to file his Supplemental Memorandum and, as the rules of this Court contain no provision for such a filing, the Court declines to consider either Plaintiff's or Defendant AT&T Inc.'s supplemental filings in connection with this motion.

DISCUSSION

To defeat a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of setting forth prima facie evidence that the court may exercise personal jurisdiction over the defendant. In re Ski Train Fire, 230 F. Supp. 2d 403, 406 (S.D.N.Y. 2002). A court may consider materials outside the pleadings and, in reviewing the motion, must view all of the pleadings in the light most favorable to plaintiff, resolving any doubts in plaintiff's favor. Id.

Plaintiff argues that AT&T Inc. is subject to general jurisdiction under N.Y. C.P.L.R. § 301, because of the undisputed activities of its subsidiaries – AT&T Operations, Inc., and AT&T Services, Inc. – in New York. Where, as here, "the claim is that a foreign corporation is present in New York because of the activities of a subsidiary within the state, the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent." Stone v. Ranbaxy Pharmaceuticals, Inc., No. JFM-10-CV-08816, 2011 WL 2462654, at *2 (S.D.N.Y. June 16, 2011). Plaintiff relies on the theory that AT&T Operations, Inc. and AT&T Services, Inc. are "mere departments" of AT&T Inc. To determine whether a subsidiary is a "mere department" of a parent, courts consider the following factors: (1) common ownership of the parent and subsidiary; (2) financial dependence of the subsidiary on the parent corporation; (3) the degree to which the parent interferes with the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (4) the degree of control that the parent exercises over the marketing and operational policies of the subsidiary. Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120-122 (2d Cir. 1984). While the first factor - common ownership - is essential to an assertion of jurisdiction, it

is not enough on its own to establish jurisdiction. See, e.g., Philip Morris Inc., v. Otamediai, 2004 WL 1348987 (S.D.N.Y. Jun 14, 2004) (no jurisdiction when common ownership present but no other factor established). The parties do not dispute that AT&T Services, Inc. and AT&T Operations, Inc. are wholly owned subsidiaries of AT&T Inc., thereby satisfying the first factor.

Plaintiff's proffers, however, fail to establish a prima facie case for the other three Beech Aircraft factors. To establish the second factor - a subsidiary's financial dependence on the parent corporation - a plaintiff must show that the subsidiary "cannot run its business without the financial backing of its parent." In re Ski Train, 230 F. Supp. 2d at 410. Plaintiff's Complaint alleges that "AT&T Services and AT&T Operations pass their earnings upstream to AT&T Inc., which reports those earnings as its own." (Compl. ¶ 24.) This allegation of consolidated earnings reports is insufficient to show that AT&T Services and AT&T Operations are financially dependant on AT&T Inc., and Plaintiff fails to proffer any more specific facts as to the financial relationship between AT&T Services and AT&T Operations, and AT&T Inc. See J.L.B. Equities, Inc. v. Ocwen Financial Corp., 131 F. Supp. 2d 544, 549-50 (S.D.N.Y. 2001) (when subsidiary generates the bulk of parent's income, "it does not appear that the subsidiary is financially dependant on the parent [but rather] that the parent, as a holding company . . . is financially dependent on its subsidiaries") (internal quotations omitted); cf. Beech Aircraft, 751 F.2d at 121 (subsidiary financially dependant on parent when parent provided subsidiary with 71% of its debt, including extension of credit that exceeded subsidiary's cash balances).

With respect to the third Beech Aircraft factor - the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities - Plaintiff alleges that "AT&T Inc.'s officers and

directors overlap with those of its subsidiaries, AT&T Operations and AT&T Services." (Compl. ¶ 26.) In particular, Plaintiff notes that "AT&T Inc.'s 2010 Annual Report identifies Jim Cicconi, Senior Executive Vice President-External and Legislative Affairs, AT&T Services, Inc., as being on AT&T Inc.'s Executive Leadership Team and AT&T Inc.'s 2009 Annual Report identifies John Stankey, President and CEO, AT&T Operations, Inc., as being on AT&T Inc.'s Executive Leadership Team." (Id.) Plaintiff does not, however, allege that AT&T Inc. interfered or played any role in the selection and assignment of Mr. Cicconi and Mr. Stankey. It is well established that "overlapping officers and directors are intrinsic to the parent-subsidiary relationship and . . . are not determinative as to whether the subsidiary is a mere department of the parent." J.L.B. Equities, 131 F. Supp. 2d at 550 (internal quotations omitted); see also Ranbaxy, 2011 WL 2462654, at *3 (third Beech Aircraft factor not satisfied when plaintiffs alleged overlap between employees but failed to allege that parent "played a role in selecting or assigning these employees"). Additionally, Plaintiff does not allege that AT&T Inc. fails to observe corporate formalities, and AT&T Inc. has provided a sworn affidavit that all corporate formalities are observed. (See, e.g., Declaration of Steven Threlkeld, Oct. 7, 2011, ECF No. 46); see also Ski Train, 230 F. Supp. 2d at 411 (considering defendant's sworn testimony that all corporate formalities between the companies were observed when determining that third Beech Aircraft factor was not met).

The fourth and final factor of the Beech Aircraft test requires plaintiff to establish the degree of control the parent exercises over the marketing and operation policies of the subsidiaries. Here, the Complaint alleges that "AT&T Inc. actively manages and controls its global enterprise comprising the business operations of all of its subsidiaries and affiliates, including AT&T Operations and AT&T Services, and markets these services as coming from a

unified entity known as AT&T." (Compl. ¶ 21.) Plaintiff asserts that AT&T Inc. is not merely a holding company, but rather is the driving force behind providing products, such as the U-verse product at issue in this action, to the public. To support this position, Plaintiff relies principally on public statements made by AT&T Inc., which refer to AT&T Inc. and its subsidiaries by the common name "AT&T." For example, in a December 20, 2007, letter to the Federal Communications Commission (FCC), an employee of AT&T Services, Inc., stated that "[i]n June 2004, SBC Communications Inc., now AT&T Inc. ("AT&T"), announced it would develop [what is now U-verse]." (Plaintiff's Opp., Exh. 5.) Similarly, in its 2010 annual report to the SEC, AT&T defines "we" as "AT&T Inc.," and states that "we are continuing to expand our deployment of U-verse services." (Plaintiff's Opp., Exh. 9 at p. 2.) The filing also notes, however, that "AT&T Inc. . . . is a holding company" and repeatedly refers to AT&T Inc.'s numerous subsidiaries. (Id.) Comparable statements appear in several other public reports. (See, e.g., Plaintiff's Opp., Exhs. 10 - 13.) These proffers are insufficient to make out a prima facie case that AT&T Inc.'s "control of [its subsidiaries] is pervasive enough that the corporate separation is more formal than real." In re Ski Train, 230 F. Supp. 2d at 410. The use of a common trade name and references to a conglomerate as a collective entity, when included in statements "intended to be read by the consuming public, cannot create a single entity structure given the sophistication and complexity of today's corporate world." Id. at 411; see also J.L.B. Equities, 131 F. Supp. 2d at 550 ("advertising strategy deciding not to present to . . . consumers the existence of a parent-subsidiary relationship is not equivalent to a showing that the parent corporation exercises any control over its subsidiary's operational or marketing activities").

Plaintiff relies on two Texas district court cases - Two-Way Media LLC v. Akamai Technologies, Inc. et al., No. Cc-8-116 (S.D. Tex. Jan 24, 2009) and Tivo Inc. v. AT&T

Inc., No. 2:09-cv-259 (E.D. Tex. Sep. 17, 2010) to support his allegations that AT&T Inc. was ultimately responsible for the launch of the accused U-verse product, and exercised "decision-making, coordination, and oversight" over the product. (Plaintiff's Opp. at 3 - 4.) Neither case, however, is applicable to the instant situation. In Two-Way Media, AT&T Inc moved for summary judgment on the ground that it could be liable for the infringing acts of subsidiaries only if there were facts sufficient to justify piercing the corporate veil. The United States District Court for the Southern District of Texas denied the motion, finding that a "jury could reasonably find that AT&T Inc. could be responsible for the infringing acts of its subsidiary." (Plaintiff's Opp., Exh. 2 at 3.) The Two-Way Media court, however, was considering different law under a different legal standard, and the opinion is irrelevant to the question of whether Plaintiff has adequately alleged that AT&T Services and AT&T Operations are "mere departments" of AT&T Inc., under the Beech Aircraft standard. Similarly, in Tivo, Inc. v. AT&T Inc., the United States District Court for the Eastern District of Texas denied AT&T Inc.'s motion to sever, finding that a genuine factual dispute existed as to the involvement of AT&T Inc. in the U-verse business and operations. Again, however, the court's analysis proceeded under a different legal standard that is not applicable to the instant application of the Beech Aircraft test. Specifically, the Tivo court noted that a "judicial finding that the claims against AT&T Inc. are peripheral to those against [AT&T Operations] amounts to a determination that AT&T Inc.'s acts can be completely divorced from the accused devices. Such a determination requires a more fully developed record and would be premature at this time." (Plaintiff's Opp., Exh. 4 at 4-5.)

    The Court has thoroughly considered all of Plaintiff's other arguments and both parties' factual proffers, and finds that Plaintiff has failed to meet his burden of establishing a

prima facie case for the exercise of personal jurisdiction over AT&T Inc.

## Conclusion

For the foregoing reasons, Defendant AT&T Inc.'s motion to dismiss the complaint as against it is granted. This Memorandum Order resolves docket entry no. 44.

Dated: New York, New York
January 18, 2013

_____
LAURA TAYLOR SWAIN
United States District Judge