UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RICHARD A. WILLIAMSON, on behalf of
and as trustee for At Home Bondholders'
Liquidating Trust,

        Plaintiff,

    -v-                                  No.  11 Civ. 4948 (LTS)(HBP)

VERIZON COMMUNICATIONS INC., et al.,

        Defendants.
-------------------------------------------------------x
RICHARD A. WILLIAMSON, on behalf of
and as trustee for At Home Bondholders'
Liquidating Trust,

        Plaintiff,

    -v-                                  No.  13 Civ. 0645 (LTS)(HBP)

AT&T OPERATIONS, INC., et al.,

        Defendants.
-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

        Plaintiff Richard A. Williamson ("Plaintiff" or "Williamson") brings this patent

infringement action against Verizon Communications, Inc., Verizon Services Corp., Verizon

Corporate Resources Group LLC, Verizon Data Services LLC, Verizon New York Inc.

(collectively, the "Verizon Defendants" or "Verizon"), AT&T Operations, Inc., and AT&T

Services, Inc. (collectively, the "AT&T Defendants" or "AT&T") (together with the Verizon

Defendants, "Defendants")[1].

---

    [1]    On January 22, 2013, the Court granted the AT&T Defendants' severance motion, and
a new case, 13 civ. 0645, was opened as to the AT&T Defendants.  This
Memorandum Order will be filed in both cases.

Plaintiff seeks leave to amend his preliminary invalidity contentions as to the AT&T Defendants, who oppose the motion.  The Court has considered carefully all of the parties' submissions and, for the following reasons, Plaintiff's motion to amend is denied insofar as Plaintiff seeks to add accusations against local advertisement insertion features of AT&T's U-verse service.

BACKGROUND

Plaintiff commenced this suit in July 2011, accusing AT&T's "U-verse" product and/or service of infringement.  On November 3, 2011, this Court issued a Scheduling Order directing the parties to provide discovery in accordance with certain of the Patent Local Rules of the United States District Court for the Northern District of California ("N.D. Cal. Patent L.R.").  (See ECF No. 58.)  On February 1, 2012, in accordance with the Scheduling Order and N.D. Cal. Patent L.R. 3-1, Plaintiff served his infringement contentions on both the Verizon and AT&T Defendants.  Plaintiff's February 1, 2012, infringement contentions were based only on publicly available information.  At the time, AT&T had produced no nonpublic or confidential information about the U-verse product, and had not yet provided the deposition testimony of its technical witness.

Plaintiff's infringement contentions directed to Verizon's FiOS service asserted that FiOS infringed the regionally-customized multicast content feature of the patents by including local ad insertion.  (See AT&T's Exh. 4, Appendix A at 2 (accusing Verizon's FiOS service of including "VHOs [that] customize content received from the Super Headend, e.g. insert local advertising on national channels").)  The contentions directed to AT&T's U-verse did not mention local ad insertion.  (See generally AT&T's Exh. 4, Appendix B.)  The

infringement contentions did, however, accuse AT&T's U-verse service of including "VHOs [that] customize content received from the Super Headend, e.g., insert local television stations or community programs."  (Id. at 5.)  In June 2012, Plaintiff served a Rule 30(b)(6) notice on AT&T, including a request for testimony on the topic of "[t]he methods and systems used to insert local advertisements into Video Content that is delivered over the U-verse network." (AT&T's Exh. 5 at 13.)  AT&T objected and moved for protection on the ground that the topic called for information on systems that Plaintiff had not accused of infringement.  Magistrate Judge Pitman sustained AT&T's objection, and subsequently denied Plaintiff's request for reconsideration of that decision.  (ECF No. 138 at 3-4.)

In July 2012, AT&T produced more than 1.8 million pages of confidential documents to Plaintiff.  At this time, Plaintiff also took the deposition of Christopher Chase, AT&T's 30(b)(6) witness on technical issues.  In light of information gleaned from AT&T's document production and the Chase deposition, Plaintiff now wishes to amend his infringement contentions to incorporate thirty-two facts about the U-verse product that he claims were not previously made available.  One such fact is that "[l]ocal advertising is inserted in national multicast content in the VHOs."  (Plaintiff's Memo of Law at 4.)

## Discussion

The Northern District of California's Patent Local Rules provide, in relevant part, that "[a]mendment of the Infringement Contentions . . . may be made only by order of the Court upon a timely showing of good cause."  N.D. Cal. Patent L.R. 3-7.[2]  The purpose of this rule is to

---

[2]     An example of a circumstance that may, absent undue prejudice to the non-moving party, support a finding of good cause is the "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite

"require parties to state early in the litigation and with specificity their contentions with respect to infringement."  O2 Micro International Ltd. v. Monolithic Power Systems, Inc., 467 F.3d 1355, 1359-60 (Fed. Cir. 2006).  "Good cause" requires a showing of diligence, and "[t]he burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence."  Id. at 1366.  To establish diligence, the movant must demonstrate not only that it promptly moved to amend its contentions, but also that it was diligent in discovering the basis for its proposed amendment.  See West v. Jewelry Innovations, No. C 07-1812 JF, 2008 WL 4532558, at *2 (N.D. Cal. Oct. 8, 2008).  Only if the moving party is able to show diligence may the court proceed to the second step of the inquiry and consider whether permitting amendment would prejudice the non-moving party.  Apple, Inc. v. Samsung Electronics, No. 11-CV-01846-LHK, 2012 WL 1067548, at *2 (N.D. Cal. Mar. 27, 2012).  "Unlike the liberal policy for amending pleadings, the philosophy behind amending [infringement contentions] is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction [and] ensure that litigants put all their cards on the table up front."  Integrated Cir. Sys. v. Realtek Semiconductor Co., 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004).  A district court's decision to grant or deny a motion to amend infringement contentions "will be affirmed unless clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence."  O2 Micro International, 467 F.3d at 1366-67.

Here, Plaintiff seeks to leave to amend his infringement contentions to reflect thirty-two newly discovered facts about AT&T's U-verse product.  On the basis of one such fact -- that "[l]ocal advertising is inserted in national multicast content in the VHOs" -- Plaintiff

---

diligent efforts, before the service of the Infringement Contentions."  N.D. Cal. Patent L.R. 3-7.

wishes to contend that the U-verse product infringes the patents-in-suit by the manner in which it inserts local ads.[3]  The issue before the Court is, therefore, whether good cause exists to amend Plaintiff's infringement contentions to include infringement for local ad insertion features, and whether such an amendment would unduly prejudice AT&T.

Plaintiff has failed to establish diligence

  The AT&T Defendants argue that the "fact and architecture of U-verse's local ad insertion system was publicly available" well before Plaintiff served his February 2012 Infringement Contentions and that, accordingly, Plaintiff could easily have obtained information sufficient to accuse the technology before he served his Infringement Contentions.  (See AT&T Memo of Law at 5.)  As Magistrate Judge Pitman noted during a July 2012 conference, "the fact that AT&T was inserting local advertisements into the content it was broadcasting or delivering was effectively open and notorious to anybody who turned on a TV connected to the AT&T network."  (Transcript of July 27, 2012, Conference at 34, ECF No. 123.)  Plaintiff's position, however, is that while public information as of February 2012, may have indicated that U-verse inserts local ads, such information was not sufficiently detailed for Plaintiff to know whether U-verse inserts local ads in a manner that infringes the patents-in-suit.  Specifically, Plaintiff contends that no publicly available documents informed Plaintiff of the actual (as opposed to planned) insertion of local ads, or of precisely where in the U-verse network the local ad insertion is performed (e.g., at the VHO level).

  This contention is contradicted by Defendants' evidentiary proffers.  For example,

---

[3] AT&T objects only to the aspects of Plaintiff's proposed amendments that introduce local ad insertion technology that was not previously accused.

Defendants note that a Google search for "local ad insertion U-verse," produces numerous industry and press descriptions of U-verse's local ad insertion capability.  (See AT&T's Exh. 6.) As an initial matter, it appears to have been common knowledge in the industry that local ad insertion occurs within a VHO in an IPTV system.  (See, e.g., AT&T's Exh. 7, Case Study: Resilient Backbone Design for IPTV Services (mentioning the U-verse product and noting that "[v]ideo streams transmitted from the SHOs [Super Hub Offices] are received at the *Video Hub Offices* (VHOs), where the video streams may be further processed (e.g., advertisement insertion, local programming) and then transmitted out towards customers") (emphasis in original).)  As of February 2012, publicly available information identified the vendor -- BigBand Networks -- whose architectural components insert the local advertisements for U-verse.  (See AT&T's Exh. 9 (July 20, 2011 press release announcing AT&T's deployment of BigBand Media Services Platform as part of U-verse TV's local ad insertion solution)).)  Additionally, at the time Plaintiff served his preliminary infringement contentions, BigBand Networks had previously disclosed a detailed description of the mechanism of local ad insertion via its Media Services Platform.  (See June 2005 Article on "Video Backbone Network Architecture", AT&T's Exh. 8 at 3.3, 5.1 (specific explanation of local ad insertion occurring at the regional headend in video networking platform)).)  Plaintiff argues that, because this description was released in 2005, it would have been entirely speculative for Plaintiff to have assumed that this architecture would still be used, six years later, in July 2011, with AT&T's U-verse product.  AT&T has pointed, however, to a July 29, 2011, article, reaffirming BigBand Networks' relationship with AT&T and confirming the logistics of local ad insertion.  (See AT&T's Sur-Reply, Exh. B at 4 (BigBand MSP platform will be installed at regional central offices, which "will allow [AT&T] to insert ads targeted to those regions").)

The crux of Plaintiff's argument appears to be that publicly available information at the time he served his infringement contentions was less reliable than non-public information that became available during discovery.  As AT&T points out, however, "it would be a rare case indeed in which the publicly-available information with respect to an accused technology were not less reliable or 'reputable' or detailed than confidential information later adduced in discovery."  (AT&T's Sur Reply at 2.)  Allowing a Plaintiff to delay serving infringement contentions because publicly available information might not be as reputable as yet-undisclosed information would run contrary to the purpose of the Northern District of California's Patent Local Rules.  See, e.g., In re Papst Licensing GMBH & Co. KG Litig., 273 F.R.D. 339, 343 (D.D.C. 2011) ("The purpose of Rule 3-1 is to prevent the case staggering for months without clear direction by focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for Markman, summary judgment, trial, and beyond") (internal quotations omitted).  Here, while the information available at the time Plaintiff served his preliminary infringement contentions may not have been the *most* reputable information in existence, it was, nonetheless, sufficient for Plaintiff to have accused local ad insertion technology.  (See AT&T's Exhs. 6-9; AT&T's Sur-Reply, Exh. B (various articles readily available prior to February 2012, stating that U-verse utilizes local ad insertion, and identifying the precise mechanism used for such ad insertion).)  Additionally, the fact that Plaintiff's preliminary infringement contentions did accuse AT&T's U-verse service of including "VHOs [that] customize content received from the Super Headend, e.g., insert local television stations or community programs," suggests a level of familiarity with the technology at issue that contradicts Plaintiff's present position that he did not know that local ad insertion would occur at the VHO level.  (AT&T's Exh. 4, Appendix B at 5.)

Accordingly, the Court finds that Plaintiff has not demonstrated that he exercised diligence in accusing U-verse's local ad insertion technology.  Because Plaintiff has failed to establish diligence, the Court declines to pursue any further inquiry as to prejudice.

CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend his preliminary infringement contentions, insofar as Plaintiff seeks to incorporate local ad insertion, is denied. The motion is unopposed, and therefore is granted, in all other respects.  This Memorandum Order resolves docket entry no. 141 in 11 civ 4948.

SO ORDERED.

Dated: New York, New York
       August 12, 2013

_____/S_____
LAURA TAYLOR SWAIN
United States District Judge